Argued and submitted September 11, accused suspended from practice of law for one year, commencing 60 days from filing of decision December 21, 2006

## In re Complaint as to the Conduct of

# CHRISTOPHER KNUTE SKAGEN,
### *Accused.*

## (OSB 03-64; SC S52940)

149 P3d 1171

Christopher Knute Skagen, Portland, argued the cause and filed the briefs for himself.

Jane E. Angus, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar. With her on the brief was Roscoe C. Nelson, II.

Before De Muniz, Chief Justice, and Carson, Gillette, Durham, Balmer, and Kistler, Justices.*

PER CURIAM

---

* Riggs, J., retired September 30, 2006, and did not participate in the consideration or decision of this case. Walters, J., did not participate in the consideration or decision of this case.

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) charged the accused with violating the following Disciplinary Rules (DR) of the Oregon Code of Professional Responsibility:[1] DR 9-101(A) (requiring lawyer to maintain client funds in trust account and to identify account with phrase "Lawyer Trust Account"); DR 9-101(C)(3) (requiring lawyer to maintain complete records of client funds in possession of lawyer and to render appropriate accounts to client regarding funds); DR 9-101(D)(1) (requiring lawyer trust account to be interest-bearing); DR 1-102(A)(3) (prohibiting dishonesty, fraud, deceit, and misrepresentation); DR 2-106(A) (prohibiting illegal or clearly excessive fee); DR 1-102(A)(4) (prohibiting conduct prejudicial to administration of justice); and DR 1-103(C) (requiring lawyer who is subject of disciplinary investigation to cooperate and respond fully and truthfully to inquiries and requests of disciplinary counsel). The Bar charged those violations in four causes of complaint, based on the accused's conduct in four different situations: (1) the accused's handling of and accounting for funds held in his lawyer trust account on behalf of a client, Anderson; (2) the fee that the accused charged Anderson and a bill that he submitted to her; (3) the accused's actions in establishing and maintaining his lawyer trust account; and (4) the accused's conduct during the Bar's investigation of the complaint against him and during the subsequent disciplinary proceeding.

After a four-day hearing, a trial panel of the Disciplinary Board concluded that the accused had violated all the rules as charged, except DR 2-106(A) and one of the two alleged violations of DR 9-101(A). The trial panel suspended the accused from the practice of law for three years and imposed an additional two-year probationary term upon his reinstatement. Pursuant to ORS 9.536(1) and Bar Rules of Procedure (BR) 10.1 and 10.3, the accused sought review of the trial panel's decision in this court.

---

[1] The Oregon Rules of Professional Conduct became effective January 1, 2005. Because the conduct at issue here occurred before that date, the Oregon Code of Professional Responsibility applies.

■    We review a decision of the trial panel *de novo*. ORS 9.536(2); BR 10.6. The Bar must establish misconduct by clear and convincing evidence, which "means evidence establishing that the truth of the facts asserted is highly probable." *In re Cohen*, 316 Or 657, 659, 853 P2d 286 (1993). For the reasons that follow, we conclude that the Bar has proved some of, but not all, the violations charged, and we suspend the accused from the practice of law for one year.

## I.    FINDINGS OF FACT

We find the following facts by clear and convincing evidence. The accused was admitted to practice in Oregon in 1991. At different times since his admission, the accused maintained offices at locations in Portland, Gresham, and McMinnville. The accused moved to New Zealand in May 2003.[2]

### A.    *Lawyer Trust Account*

On February 25, 2000, the accused opened a trust account with US Bank in Gresham. The accused advised the bank that he wanted to open an interest-bearing lawyer trust account, and the bank labeled the account "CHRISTOPHER SKAGEN BENEF, CLIENT LTAB ACCOUNT, CHRISTOPHER SKAGEN ATTORNEY AT LAW TSTEE." The bank's internal code "LTAB" denoted that the account was a lawyer trust account; however, the account name, the accused's checks, and the accused's monthly statements all failed to include the designation "Lawyer Trust Account." Pursuant to DR 9-101(D)(2)(c), the interest on lawyer trust accounts is to be paid to the Oregon Law Foundation (OLF). Due to a bank error, no interest was earned on the account or paid to the OLF until May 2004.

Between February 2000 and April 2004, the accused never reconciled his monthly statements and, therefore, never verified whether the bank was in compliance with his original instructions to set up an interest-bearing account with the name "Lawyer Trust Account." Moreover, when

---

[2] The record does not disclose when the accused returned to Oregon from New Zealand. However, it is undisputed that, as of the date that this case was argued and submitted, the accused was an active member of the Bar and maintained an office in Portland.

asked at his deposition whether he had maintained a trust account ledger for all client funds kept in his lawyer trust account, the accused reported that he had kept track of his clients' account balances in his head. When asked whether that approach complied with the relevant disciplinary rule, the accused replied: "I don't know. I don't think it complies entirely. * * * I haven't thought about that." Finally, the accused stated that he had deposited personal funds in his lawyer trust account on a "handful of occasions."

In November 2001, the accused made out three checks to himself in the amounts of $450, $250, and $50, drawing down the balance in his lawyer trust account to $46.13.[3] That amount was insufficient to cover funds belonging to the accused's clients, including Anderson, that should have been in the account.

## B. *Anderson Matter*

On November 27, 2000, Anderson retained the accused to represent her in the dissolution of her marriage. Anderson and the accused executed a written fee agreement, which required Anderson to pay a "nonrefundable lump sum, earned when paid fee" of $1,500. The agreement provided that the accused would credit his first ten hours of work to that fee and that additional time would be charged at $150 per hour and billed monthly. The agreement also provided that Anderson would be responsible for "all costs, including expert witness fees, filing fees, subpoena fees etc." and that the accused would send her "pleadings, documents, correspondence, and other information throughout the case." Anderson gave the accused a check for $1,500. The accused did not deposit that check into his lawyer trust account; instead, he deposited it into his business account. Additionally, the accused advised Anderson that the filing fee in her case would be $300 and asked Anderson to give him a separate check for that amount. Anderson gave the accused a second check in the amount of $300, which he deposited into his lawyer trust account. On November 28, 2000, the accused filed a Petition for Dissolution of Marriage in Yamhill County

---

[3] The accused experienced financial difficulties in 2001 and 2002 and filed a bankruptcy petition in February 2002.

Circuit Court and drew a check against his lawyer trust account in the amount of $225 to pay the filing fee.

Subsequently, the accused performed legal services for Anderson in the dissolution matter. During his representation of Anderson, the accused did not keep regular time records of services that he performed for her, did not provide monthly billings as provided in the fee agreement, and never prepared any billing statements or other accountings concerning her funds in the trust account.

On September 20, 2001, Anderson wrote a letter to the accused in which she expressed her dissatisfaction with his representation and terminated his services. In that letter, Anderson requested an itemized statement detailing the services rendered to her by the accused, a copy of her file, and a refund of the unearned portion of the $1,500 retainer. In response to that letter, on September 25, 2001, the accused prepared a billing statement concerning Anderson's dissolution matter. In that billing statement, the accused represented that he had devoted 18.9 hours to Anderson's dissolution matter between November 27, 2000 and September 14, 2001, and that, after the $1,500 retainer was deducted from the total amount due, Anderson owed an outstanding balance of $1,335. Because the items in that billing are central to certain of the Bar's allegations, we discuss a few of them in further detail.

The accused billed Anderson 3.3 hours on November 28, 2000, for preparing and filing the petition for dissolution and other related documents. Additionally, he billed 1.8 hours on November 30, 2000, to "Finalize Initial Dissolution Documents." On that date, the accused filed an amended petition that was identical to the original petition filed on November 28, except that the amended petition included the date of the Andersons' marriage and husband's social security number—information that the accused had omitted from the original petition.

The accused billed Anderson for a "Telephone call to [husband] re inheritance" on January 10, 2001, and for a "Conference with [husband] re Uniform Affidavit" on April 13, 2001. At his deposition, the accused stated that he could not recall having any conversations with husband. The

accused further testified that the January billing entry must have been wrong, because the telephone call must have been to either husband's lawyer (Bierly) or Anderson, and that the April billing entry incorrectly referred to husband instead of some other person. Nothing in the record, other than the billing statement itself, indicates that the accused had any communication with Anderson, Bierly, or any other person connected to Anderson's case on either of those dates. Indeed, the testimony of several witnesses, including the accused, contradicted those time entries.[4]

The accused also billed Anderson for a conference with husband's attorney's office on July 12, 2001. That billing entry states: "JO: Telephone conference with Bierly office re filing pleadings; receive letter from Bierly's office re out of Town until 7/23/01." The Bar asserts that that entry was for time spent on Anderson's case by the accused's legal assistant, whose initials were "JO." Bierly testified that his office had contact with the accused's assistant on July 12, 2001, but not with the accused. The accused testified that he recalled doing work on Anderson's case on that date and that he thought that the entry actually reflected time that he had spent on the case. He further testified that, if the entry reflected his assistant's time, he had not intended to bill for that time because the fee agreement did not permit him to do so. The accused also stated that, if his assistant had performed work on Anderson's case on that date, then he likely had, as well.

Following the termination of his services on September 20, 2001, the accused did not return to Anderson the remaining $75 of the $300 that she had advanced for filing fees. Neither did he provide an accounting of those funds. As noted above, by November 2001, the accused had drawn down the balance in his trust account to $46.13. More than a year later, after the Bar began its investigation, the accused, on October 10, 2002, deposited $75 into his trust account to cover the funds belonging to Anderson.

---

[4] Both Anderson and Bierly testified at the hearing that they had had no communication with the accused on January 10, 2001. Bierly also testified that, according to his time records, he had met with husband on April 13, 2001, but had had no communication with the accused on that date.

## C. *Bar Investigation*

On April 29, 2002, Anderson complained to the Bar about the accused's performance in handling her dissolution matter. In that complaint, Anderson stated that, after she had compared her own records of her communications with the accused to the itemized billing statement that he had sent her, she believed that many of the dates corresponding to the billing entries had been "fabricated." Among other things, Anderson also complained specifically about the accused's failure to notify her of the scheduled trial date and generally of his failure to attend to several aspects of her case. As a result of her experience with the accused, Anderson stated that she was forced to find another lawyer to represent her in the dissolution matter and that she was "frightened" to do so because she was "afraid that all attorneys acted in such manner with their clients."

In response to Anderson's complaint, on April 30, 2002, the Bar's disciplinary counsel wrote to the accused informing him of its investigation and requesting that he provide his account of the matter along with a copy of his billing statements, time records, and correspondence concerning his representation of Anderson. On June 10, 2002, the accused responded that, because he had moved his office and home in February and March of that year, he was unable to locate Anderson's file and suggested that the Bar obtain copies of as much of the file as possible from Anderson to help expedite his further response. The accused also disputed any contention that his fee was excessive and stated that, because Anderson still owed him $1,335, he was holding a "disputed" amount of $75 in trust. Subsequently, the Bar sent another letter to the accused on July 12, 2002, requesting responses to a number of additional inquiries, including whether he had billed Anderson monthly for his time, what records he had used to prepare the itemized billing statement dated September 25, 2001, and why that billing statement did not account for the funds that Anderson had advanced to cover the filing fees in her case. Additionally, the Bar requested that the accused provide a copy of his lawyer trust account statements from November 2000 to the present.

The accused responded to those requests in a letter dated August 8, 2002. The accused stated that he had not billed Anderson monthly for his services because the fee agreement had required that he do so only after his services had exceeded ten hours[5] and because he "did not have time to do the billing for fees." With respect to the preparation of Anderson's billing statement, the accused stated that his assistant had prepared the billing based on his notes, which indicated the dates, the work performed, and the amount of time spent to perform that work. The accused admitted that he had not provided an accounting of Anderson's $300 filing-fee advance in the billing statement and that his failure to do so was an "error." Finally, in response to the Bar's request for copies of his lawyer trust account statements, the accused provided the following explanation for why he could not comply with that request:

"The main reason is based on my clients['] rights to privacy. I assert my clients['] attorney/client privilege. I previously provided records relating to [Anderson.] Your request is outside the scope of this investigation and the breadth of the request spills over into my other clients['] rights to privacy. Trust accounting for my clients is not an issue in this matter. Whatever my clients have held in my trust account is a client secret and not subject to disclosure. * * * I am sorry, but I cannot give you what you request[.] * * * All bar proceedings are public record. My clients have a constitutional right to privacy."

On September 3, 2002, the Bar renewed its request for a copy of the accused's lawyer trust account statements. The Bar informed the accused that its investigation included his handling of Anderson's funds and that his lawyer trust account should have maintained a $75 balance of funds belonging to Anderson from November 2000 to the present. The accused provided copies of some of his monthly statements in response to that request on October 10, 2002. The accused reported that the statements for several months

---

[5] According to the itemized billing statement that the accused prepared in September 2001, he had completed the first ten hours of work on Anderson's case by January 2, 2001—more than eight months prior to Anderson's termination of the accused's services.

were missing and that he had requested copies of those statements from the bank and would forward them to the Bar immediately upon receipt. One of the missing monthly statements was that for November 2001. As noted previously, that statement would have shown that the accused wrote checks to himself in November 2001 for a total of $750, drawing the balance in the account down to $46.15. At that time, the account should have held at least the extra $75 that Anderson had paid in excess of the actual filing fee for the dissolution proceeding. In a letter to the accused dated May 6, 2003, the Bar stated that it had not received copies of those missing statements and again requested that the accused submit them no later than May 16, 2003.

On May 19, 2003, disciplinary counsel had a telephone conversation with the accused's lawyer, who reported that the accused was no longer located in Oregon and that he had closed his practice and moved to New Zealand on or about May 5, 2003. In a follow-up letter to that conversation, the Bar requested that the accused provide current contact information and again requested that he provide the missing bank statements. The Bar suggested that the accused make immediate arrangements with the bank to have the records forwarded to the Bar. On June 5, 2003, the accused responded with a letter indicating that the requested bank statements were enclosed. The Bar immediately wrote back, stating that several bank statements still had not been forwarded, including the November 2001 statement. Finally, on June 19, 2003—more than 11 months after the Bar's initial request—the accused provided the remaining bank statements to the Bar.

The Bar filed a formal complaint against the accused on September 10, 2003. In response, the accused filed a motion to require the complaint to comply with BR 4.1(c),[6] arguing that it "fail[ed] to connect alleged facts with alleged

---

[6] BR 4.1(c) provides:

"A formal complaint shall be signed by Disciplinary Counsel, or his or her designee, and shall set forth succinctly the acts or omissions of the accused, including the specific statutes or disciplinary rules violated, so as to enable the accused to know the nature of the charge or charges against the accused. When more than one act or transaction is relied upon, the allegations shall be separately stated and numbered. The formal complaint need not be verified."

violations in a manner that clearly state[d] which pleaded allegations violate[d] which Disciplinary Rules." Subsequent to filing its complaint, the Bar made several requests that the accused provide dates for his deposition. Due to the accused's failure to cooperate with those requests, the Bar filed a Motion to Compel Deposition on December 1, 2003.

In an order dated December 9, 2003, the trial panel addressed those issues and a number of others presented by both parties. First, the trial panel granted the accused's motion to require the complaint to comply with BR 4.1(c) and ordered the Bar to file an amended complaint.[7] Additionally, the trial panel granted the Bar's motion to compel the accused's deposition and ordered the accused to make himself available for a telephone deposition between February 1 and March 30, 2004. Finally, the trial panel sustained the accused's objection to the Bar's request for discovery of all client files other than Anderson's.

On March 26, 2004, the Bar deposed the accused by telephone. During that deposition, the accused repeatedly objected and refused to answer questions posed by the Bar on various grounds, including lawyer-client privilege, client secrets, work product, and harassment. The following illustrates the types of questions asked and objections made:

"Q. After Ms. Anderson terminated the attorney-client relationship in September 2001 until the Bar asked you about Ms. Anderson's cost advance, did you review your trust account records?

"A. I'm going to object to that question on the basis it asks for information about other clients, and that information is privileged, that information is secret. And it goes way beyond the scope of this proceeding as limited by the trial panel chairperson.

"Q. When do you contend that you determined or discovered that you had not maintained Ms. Anderson's funds in your lawyer trust account?

"A. I'm going to object to that question on the basis of work product.

---

[7] The accused made several subsequent challenges to the Bar's amended complaints, but the trial panel denied them all.

"Q.   Are you going to answer the question?

"A.   No, I'm not going to answer it.

"Q.   What caused you to review the issue?

"A.   Which issue?

"Q.   Whether or not you had Ms. Anderson's funds maintained in your lawyer trust account, the issue that we've been questioning?

"A.   I'm going to object to that question again on the basis of privilege and work product.

"Q.   When did you make the review?

"A.   The review of what?

"Q.   The records.

"A.   Which records?

"Q.   Did you review any records to determine whether or not Ms. Anderson's funds had been disbursed from your trust account?

"A.   Again I'm going to object to that particular question on the basis of work product. I won't answer it.

"Q.   Any other objections?

"A.   Work product. Privileged. You're asking some pretty general questions, but it appears to be specific with regards to Ms. Anderson. I'll just simplify it and state that there's probably some correspondence with you which reflects—from me which reflects a point at which that matter was answered and responded to. And—just leave it at that.

"Q.   * * * [W]ould you please answer the question?

"A.   It also goes beyond the scope of these proceedings as well. But it is work product and it is privileged whatever I might have discovered and when I discovered it with regard to these proceedings.

"Q.   So you're refusing to answer the question?

"A.   Yes, I am. Again you're just perpetuating the questions. This is unnecessary information, you don't need to know it. You're just using it to harass and prolong the proceedings.

"Q. When you determined that Ms. Anderson's funds had not been maintained in your lawyer trust account, what did you do?

"A. That assumes a fact not in evidence. And you're asking me two questions.

"Q. When you determined that Ms. Anderson's funds had not been maintained in your lawyer trust account, what did you do?

"A. That[ ] assumes a fact that is not in evidence."

As the result of several similar exchanges between the accused and disciplinary counsel throughout the deposition, the Bar filed a Motion to Compel Accused's Response to Deposition Questions on April 30, 2004. In that motion, the Bar argued that the accused's objections at his deposition were unjustified, were not supported by law, and served only to obstruct and delay the Bar's discovery. As a result, the Bar contended, the accused unnecessarily had increased the time and expense associated with the proceeding.

Also in April 2004, the Bar served the accused with a Request for Production of Documents related to the accused's treatment of the funds that Anderson had delivered to him. Additionally, the Bar requested documents related to the accused's maintenance of his lawyer trust account, including whether he specifically identified the account by use of the phrase "Lawyer Trust Account," whether the account was an interest-bearing account, and whether any interest earnings had been paid to the OLF. Finally, the Bar requested documents related to the accused's representation of Anderson, including time records and Anderson's client file. The accused refused to comply with those requests. As a result, the Bar filed a Motion to Compel Production of Documents on May 6, 2004, in which it requested that the trial panel compel the accused to produce the documents. In that motion, the Bar argued that the accused's failure to comply with its requests violated BR 4.5(b),[8] ORCP 36 (providing general

---

[8] BR 4.5(b) provides, in part:

"(1) Requests for admission, requests for production of documents, and depositions may be utilized in disciplinary proceedings.

"* * * * *

provisions governing discovery), and ORCP 43 (governing production of documents).

On June 9, 2004, the trial panel ruled on the Bar's motions. After reviewing the accused's deposition, the trial panel concluded that the Bar's questions properly had related to Anderson's case in particular or to the accused's maintenance of his lawyer trust account in general. The trial panel further concluded that the Bar's questions were reasonable under DR 1-103(C) (requiring lawyer subject to disciplinary proceeding to respond fully and truthfully to inquiries from investigating tribunal) and had not violated the trial panel's order of December 9, 2003. Additionally, the trial panel concluded that the documents that the Bar had requested were not protected by any privilege and did not qualify as work product. Consequently, the trial panel ordered the accused to submit to another deposition, "to fully and truthfully respond to all reasonable inquiries," and "to provide those documents to which he has access," including Anderson's client file and those records reflecting his receipt, deposit, and withdrawal of Anderson's funds. Because the accused did not comply with the trial panel's order to produce the latter documents, the Bar issued a subpoena to US Bank in October 2004 to obtain the bank's documents related to his lawyer trust account.[9]

The Bar deposed the accused again on November 11, 2004. At that deposition, the accused admitted that, at some point prior to his first deposition in March 2004, he had made a conscious decision to not send to the Bar a deposit slip reflecting a return of Anderson's $75 to his lawyer trust account—a document that the Bar had requested and the trial panel had ordered him to produce. The accused did not provide that deposit slip to the Bar until November 29, 2004, the first day of the hearing in this proceeding.

---

"(4) The manner of making requests for the production of documents shall conform as nearly as practicable to the procedure set forth in the Oregon Rules of Civil Procedure."

[9] At the Bar's expense, the bank produced copies of records related to the accused's lawyer trust account, including cancelled checks and deposit slips for the period of October 2000 to April 2002, and monthly statements for the period of February 2000 to September 2004.

D.  *Trial Panel Disposition*

The trial panel held the accused's hearing on November 29 and 30, 2004, and January 5 and 6, 2005, and filed an opinion on August 1, 2005. As discussed below, the trial panel found that the Bar had established by clear and convincing evidence that the accused violated the following disciplinary rules: DR 9-101(A); DR 9-101(C)(3); DR 1-102(A)(3); DR 9-101(D)(1); DR 1-102(A)(4); and DR 1-103(C). The trial panel also found, however, that the Bar had not established by clear and convincing evidence that the accused had charged Anderson an illegal or clearly excessive fee in violation of DR 2-106(A) or that he had failed specifically to identify his lawyer trust account by use of the phrase "Lawyer Trust Account," in violation of DR 9-101(A). As noted above, the trial panel suspended the accused from the practice of law for three years and imposed a two-year probationary term upon his reinstatement, with conditions related to obtaining professional office management assistance and establishing appropriate procedures regarding time records and bank accounts.

The accused seeks review of the trial panel's decision, raising eight assignments of error. In the discussion that follows, we first consider the assignments of error related to the trial panel's findings of fact and conclusions of law, in the context of the four causes of complaint that the Bar alleged. Next, we consider the accused's due process arguments, and, finally, we consider his challenges to the trial panel's sanction and to the trial panel's refusal to sanction the Bar for alleged discovery violations. For its part, the Bar asserts on review that the trial panel erred in concluding that it had not proved by clear and convincing evidence that the accused violated DR 2-106(A) and one of the two alleged violations of DR 9-101(A).

## II.  ALLEGATIONS

A.  *First Cause of Complaint:  DR 9-101(A) and DR 9-101(C)(3)*

In its first cause of complaint, the Bar alleged that the accused (1) failed to maintain client funds in a trust

account, in violation of DR 9-101(A);[10] and (2) failed to maintain complete records of and render appropriate accounts for client funds in his possession, in violation of DR 9-101(C)(3).[11]

The trial panel found that the Bar had established by clear and convincing evidence that the accused had violated DR 9-101(A) because the balance in his trust account had reached $46.13 in November 2001. The trial panel also found that the Bar had established by clear and convincing evidence that the accused had violated DR 9-101(C)(3) because he never gave Anderson a written accounting of the funds held in trust for costs associated with her case.

### 1. *DR 9-101(A)*

■     The accused first argues that the trial panel erred in finding that he had violated DR 9-101(A) because his failure to maintain Anderson's $75 in his trust account was nothing more than "negligence," and "negligence is not a disciplinary matter." The accused points to the following statement in *In re Gygi*, 273 Or 443, 450-51, 541 P2d 1392 (1975), to support that proposition: "Although negligence may be a sufficient basis for civil liability under Rule 10b-5 in a federal securities suit, we are not prepared to hold that isolated instances of

---

[10] DR 9-101(A) provides, in part:

"All funds of clients paid to a lawyer or law firm, including advances for costs and expenses and escrow and other funds held by a lawyer or law firm for another in the course of work as lawyers, shall be deposited and maintained in one or more identifiable trust accounts in the state in which the law office is situated."

[11] DR 9-101(C) provides, in part:

"A lawyer shall:

"* * * * *

"(3) Maintain complete records of all funds, securities and other properties of a client coming into the possession of the lawyer and render appropriate accounts to the lawyer's client regarding them. Every lawyer engaged in the private practice of law shall maintain and preserve for a period of at least five years after final disposition of the underlying matter, the records of the accounts, including checkbooks, canceled checks, check stubs, vouchers, ledgers, journals, closing statements, accountings or other statements of disbursements rendered to clients or equivalent records clearly and expressly reflecting the date, amount, source and explanation for all receipts, withdrawals, deliveries and disbursements of funds or other property of a client."

ordinary negligence are alone sufficient to warrant disciplinary action."

■ The accused's reliance on *Gygi* is misplaced. *Gygi* was a case in which this court refused to give preclusive effect to a federal trial court's ruling in a securities action that the accused lawyer had been negligent, because that civil proceeding required proof of the accused lawyer's negligence by only a preponderance of the evidence, whereas the subsequent disciplinary proceeding required the Bar to prove the accused lawyer's unethical negligent conduct by clear and convincing evidence. Nevertheless, *Gygi* is often cited, as it is here, for the proposition that an isolated instance of ordinary negligence alone is insufficient to warrant disciplinary action. As this court has stated before, however, *Gygi* does not support such a broad rule:

> "The accused contends this court has held that isolated instances of negligence are not grounds for discipline. That is too broad a statement. In [*Gygi*], we held an attorney's negligence in preparing a corporate annual report was not sufficient to warrant disciplinary action. However, we contrasted *In re Marvin G. Hollingsworth*, 272 Or 319, 536 P2d 1244 (1975), in which we held that negligence in making court appearances and disbursing funds did warrant discipline.
>
> "A breach of the Code is a subject of disciplinary action if done negligently and if the breach is apt to cause the harm the Code sought to prevent."

*In re McCaffrey*, 275 Or 23, 28, 549 P2d 666 (1976).

In further support of his position, the accused relies on *In re Starr*, 326 Or 328, 952 P2d 1017 (1998), where this court stated in a footnote that it "never has held that DR 9-101(A) is a strict liability offense." *Id.* at 337 n 3. The Bar responds by pointing to *In re Phelps*, 306 Or 508, 760 P2d 1331 (1988), where this court stated, "Failing to maintain funds in a trust account does not require intent[.]" *Id.* at 513. The Bar argues that *Phelps* held that proving that a lawyer failed to maintain funds in a lawyer trust account does not require proof of any particular mental state. As we shall explain, however, this case does not present circumstances

requiring us to consider the merits of that argument by the Bar.

Here, following the termination of his services on September 20, 2001, the accused did not account for or disburse to Anderson the remaining $75 of the $300 that she had advanced for filing fees. Rather, two months after that termination, he made out three checks from the trust account to himself in the amounts of $450, $250, and $50, drawing down the balance to $46.13.

■ Based on our *de novo* review of the record, we find that the accused was negligent in handling his lawyer trust account. The record does not contain clear and convincing evidence to support the claim that the accused "knowingly" withdrew trust account funds that belonged to Anderson, and, indeed, the accused may not have been aware that the balance in his trust account was below $75 in November 2001. However, it is undisputed that the accused never reconciled his monthly bank statements, and, when asked whether he had prepared a trust account ledger to keep track of his clients' funds, he responded that he kept track of those funds in his head. Defendant was negligent in failing to maintain records from which he would have known the amount of money in his trust account and in writing checks to himself that caused the balance in that account to fall below the level required to maintain the funds that belonged to Anderson. In sum, the accused negligently failed to comply with DR 9-101(A), and the rule is satisfied by proof of that kind.

The accused raises an alternative argument, which he claims justifies his actions with respect to Anderson's funds in the trust account. He contends that he was not required to return the balance of Anderson's cost advance upon termination because that amount was disputed, in light of the remaining $1,335 that he asserts Anderson owed to him. DR 9-101(A)(2), however, prohibits the withdrawal of disputed funds from a lawyer trust account "until the dispute is finally resolved." Here, the accused withdrew a portion of Anderson's funds from his lawyer trust account even though she disputed the amount. Thus, he also failed to adhere to the rule's requirement with respect to disputed funds.

Finally, the accused asserts that his conduct did not violate DR 9-101(A) because he later replaced the money, the amount involved was *"de minimis,"* and the money "was not of concern to the client." We reject those contentions without discussion.

We find that the Bar has proved by clear and convincing evidence that the accused failed to maintain client funds in his lawyer trust account, in violation of DR 9-101(A).

## 2. *DR 9-101(C)(3)*

The accused argues that the trial panel erred in finding that he had failed to maintain appropriate trust account records or to provide Anderson with an accounting in violation of DR 9-101(C)(3) because (1) there were records of his dealings with Anderson; (2) he accounted for the $75 as part of the investigation; and (3) that rule does not specify that an accounting is to be made at a particular time. The accused further contends that the rule does not require an accounting until the client requests one. Thus, according to the accused, because his correspondence with Anderson does not reveal a specific request on her part for an accounting, he was not required to provide one.

First, the facts discussed above prove by clear and convincing evidence that the accused failed to maintain "complete records" of Anderson's $300 filing-fee advance, as required by DR 9-101(C)(3). Moreover, the accused admitted that he kept track of his clients' account balances in his head. That conduct is insufficient to comply with the rule. Second, with respect to the accused's contention that the accounting requirement contained in DR 9-101(C)(3) is dependent upon a request for an accounting from the client, this court previously has rejected that argument. *See In re Gildea*, 325 Or 281, 290-91, 936 P2d 975 (1997) (concluding that text of DR 9-101(C)(3) makes clear that requirement that lawyer render all "appropriate" accounts is not preconditioned on client first asking for an accounting). In any event, Anderson's letter terminating her lawyer-client relationship with the accused, in which she requested an itemized statement detailing the services rendered to her by the accused and the return of any unused portion of the initial fee, constituted a request for an accounting of all funds provided to the accused.

The accused nevertheless argues that DR 9-101(C)(3) does not specify that a lawyer must make an accounting at a particular time. The facts of this case do not make that argument available to the accused. As this court put the matter in *Gildea*: "Whatever efficacy it might have in other circumstances, that argument cannot aid the accused here, because the rule clearly requires an accounting at *some* time, and the accused *never* made one." 325 Or at 291 n 10 (emphasis in original). Although the accused eventually sent Anderson a bill that detailed the services that he had provided to her, that bill did not provide an accounting of Anderson's funds in the accused's lawyer trust account.

We hold that the Bar has proved by clear and convincing evidence that the accused failed to maintain complete records of and render appropriate accounts for client funds in his possession, in violation of DR 9-101(C)(3).

B. *Second Cause of Complaint: DR 1-102(A)(3) and DR 2-106(A)*

In its second cause of complaint, the Bar alleged that the accused (1) engaged in conduct involving dishonesty and misrepresentation, in violation of DR 1-102(A)(3);[12] and (2) charged an illegal or clearly excessive fee, in violation of DR 2-106(A).[13]

The trial panel determined that the accused made misrepresentations in violation of DR 1-102(A)(3) in the billing statement that he prepared and sent to Anderson. The

---

[12] DR 1-102(A) provides, in part:

"It is professional misconduct for a lawyer to:

"* * * * *

"(3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

[13] DR 2-106 provides, in part:

"(A) A lawyer shall not enter into an agreement for, charge or collect an illegal or clearly excessive fee.

"(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly."

trial panel reached that conclusion based on a number of errors in the billing statement, some of which we describe below. The trial panel found that the accused had not performed some of the services identified in the bill that he had sent to Anderson, but also that the accused *had* performed other services for Anderson that were not identified in the bill. The trial panel stated:

> "[The accused] prepared the billing knowing that he could not substantiate or verify all time charged. The trial panel finds that the [a]ccused acted recklessly in preparing his billing. There were misrepresentations in the billing that a reasonable person would know did not accurately reflect the work actually performed on Anderson's behalf. This lack of attention to detail, and failure to insure that documents related to the case were accurately prepared is similar to the lack of attention to detail that the [a]ccused has given to his monthly lawyer trust account statements * * *."

The trial panel rejected the Bar's charge that the accused had violated DR 2-106(A), which prohibits charging an excessive fee. The trial panel found that "time charged on January 10, 2001, April 13, 2001, and July 1[2], 2001, was not performed for the client" and therefore was excessive, but nevertheless concluded that the total fee charged was not excessive, because, as noted, the accused also performed work that was not reflected in the bill.

### 1. *DR 1-102(A)(3)*

The accused argues that the trial panel erred in finding that he violated DR 1-102(A)(3) because his conduct constituted nothing more than "unintentional errors" in the billing. Therefore, the accused argues, the alleged misrepresentation and dishonesty were not committed knowingly, which is a prerequisite for a violation of DR 1-102(A)(3). The Bar responds that the accused "knowingly" and "intentionally" engaged in misrepresentation and dishonesty by billing for services that he did not perform or that did not occur and by inflating the time for services rendered (or taking excessive time to perform those services).

Evaluating an allegation of affirmative misrepresentation under DR 1-102(A)(3) involves a two-part inquiry:

(1) whether the accused lawyer knew that the lawyer's statement was a misrepresentation—*i.e.*, the misrepresentation must have been committed knowingly; and (2) whether the lawyer knew that it was material. *In re Claussen*, 331 Or 252, 261, 14 P3d 586 (2000). A material misrepresentation involves information that, if the decision-maker had known of it, would or could have influenced the decision-making process significantly. *Id.*

The Bar also may prove a violation of DR 1-102(A)(3) by demonstrating that the accused lawyer engaged in "conduct involving dishonesty." In contrast to what is required to prove an affirmative misrepresentation, the Bar may prove dishonest conduct without proving that the accused knowingly made affirmative false statements. *See In re Carpenter*, 337 Or 226, 233-34, 95 P3d 203 (2004) (describing differences in evidence required to prove "misrepresentation" and "dishonesty" under DR 1-102(A)(3)). Dishonest conduct is "conduct that indicates a disposition to lie, cheat, or defraud; untrustworthiness; or a lack of integrity." *Carpenter*, 337 Or at 234 (quoting *In re Dugger*, 334 Or 602, 609, 54 P3d 595 (2002)). Although proving that a lawyer acted dishonestly does not require evidence that the lawyer *intended* to deceive, it does require a mental state of knowledge—that is, that the accused lawyer *knew* that his conduct was culpable in some respect. *See Carpenter*, 337 Or at 235 ("[D]ishonesty requires a mental state of knowledge *or* intent." (Emphasis in original.)).

We note first that the trial panel did not find that the errors in the accused's billing had been knowing or intentional. Rather, the trial panel concluded that the accused had acted "recklessly" and that he had prepared a bill knowing that he could not substantiate or verify all of the entries on the bill with contemporaneous records. When a lawyer prepares a bill that is inaccurate in one or more respects, as the accused admits the bill prepared for Anderson was, that conduct may breach a contract between the lawyer and the client or it may provide a basis for the client's refusal to pay disputed charges on the bill. However, unless the Bar proves by clear and convincing evidence that the accused lawyer knowingly or intentionally prepared a bill that contained material

misrepresentations or was the product of the lawyer's dishonest conduct, the lawyer has not violated DR 1-102(A)(3).

■    We now turn to the specifics of the bill at issue here. As noted above, after Anderson requested a bill, the accused directed his assistant to prepare a bill based on the available documentation, which she did. The Bar identifies three aspects of the bill that it asserts constitute misrepresentation or dishonesty: billing for services that were not performed; billing for services for which the accused was not authorized to charge; and inflated or excessive time for certain activities.

As noted previously, the billing statement includes entries for a telephone conference between the accused and husband on January 10, 2001, and another conference between the accused and husband on April 13, 2001. It is undisputed that the accused did not confer with husband on either of those dates. The accused admits that those entries contained errors, but asserts that the conferences to which they referred actually occurred and were conferences either with husband's lawyer or with Anderson and may have occurred on other dates.

■    Having reviewed the record, we find that the Bar has not proved by clear and convincing evidence that the accused knew, at the time that he sent the bill, that those entries were incorrect. Neither has the Bar demonstrated that those entries did not reflect conferences that the accused actually had with husband's lawyer or with Anderson, albeit on different days than indicated in the bill. In other words, on this record, the accused's explanation of the errors in the bill is plausible. That conclusion is supported by the trial panel's determination that the accused acted "recklessly" and not intentionally or knowingly with respect to the errors in the bill and the trial panel's factual finding that the accused performed work on Anderson's dissolution that was *not* reflected in the time entries in the bill. Moreover, for a misrepresentation to violate DR 1-102(A)(3), it must be material. An entry on a bill that accurately reflects work performed for a client, but misstates the name of a person the accused lawyer

talked to or the particular day the work was performed, ordinarily will not be material.[14]

■■■■ The Bar also argues that the accused violated DR 1-102(A)(3) by billing Anderson for certain work that accused's assistant performed and billing for that work at the same rate that the accused billed for his own time. The Bar asserts that the fee agreement did not permit the accused to bill for his secretary's time. We agree with the Bar's assertion: The fee agreement is silent as to whether the accused could charge Anderson for work that his assistant performed on Anderson's behalf. In the absence of such an agreement, the accused was not entitled to bill for that activity. The accused testified, however, that he understood that the fee agreement did not permit him to bill for his assistant's time and that he did not intend to do so. He states that the entry, which we have quoted previously, does not necessarily indicate that he was billing for her time and that he billed only for his own time. He further testified that he had worked on Anderson's case on that date.

While the accused's explanations leave room for doubt and the trial panel was plainly correct in concluding that the accused "acted recklessly" in preparing his billings, we cannot say that the record in this case shows by clear and convincing evidence that the accused knowingly made a material misrepresentation when he included the July 12, 2001, entry in the bill. The Bar has not proved a violation of DR 1-102(A)(3) in that respect.

■■■■ Finally, the Bar asserts that the accused violated DR 1-102(A)(3) with respect to a billing entry for November 30, 2000. The accused billed 3.3 hours on November 28, 2000, for

---

[14] The Bar identifies a number of other entries on the bill as misrepresentations. Many of those appear to be errors that resulted from the accused's assistant's efforts to reconstruct the bill from a variety of contemporaneous notes and documents. For example, the bill contains an entry dated February 20, 2001, for receiving and reviewing a letter from husband's lawyer that was dated February 20, 2001, and apparently sent by regular mail on that date. Although the Bar is probably correct that the letter was actually received and reviewed *after* February 20, 2001, nothing in the record suggests that the accused did not, in fact, receive and review the letter or that the accused knowingly misrepresented a material fact or acted dishonestly when he sent the bill that his assistant had prepared and containing that error.

preparing Anderson's dissolution petition and related documents, which he filed on that day. He then billed 1.8 hours on November 30 for filing an amended petition, which was identical to the November 28 petition except that it included husband's social security number and the date of the marriage, which had been omitted from the earlier petition. The record also indicates that other papers were prepared and filed with the court on November 30, including a motion for a temporary restraining order, but those documents were not mentioned in the accused's billing entry for that date. The accused was unable to recall what work he had performed for Anderson on November 30.

The trial panel agreed with the Bar that the accused had violated DR 1-102(A)(3) with respect to the November 30 billing entry. The trial panel stated that the accused was not entitled to bill Anderson for time spent correcting the accused's own mistakes.

We disagree. Again, the Bar and the trial panel appear to have confused what may be a contract dispute between the accused and Anderson with the stricter standards for proving misrepresentation or dishonest conduct. Whether the accused could charge Anderson for correcting the omissions in the initial petition—even assuming that those omissions demonstrated some error on the accused's part—is a matter of the agreement between the accused and Anderson. But the mere fact that he billed her for preparing and filing an amended petition that included required information not included in the initial petition does not demonstrate any misrepresentation; neither does it constitute dishonest conduct. Similarly, the record does not contain clear and convincing evidence that the accused's billing of 1.8 hours for work performed on November 30, 2000, was a material, false statement or constituted dishonest conduct.

We hold that the Bar has not proved by clear and convincing evidence that the accused knowingly engaged in conduct involving misrepresentation of dishonesty, in violation of DR 1-102(A)(3).

2. *DR 2-106(A)*

As noted, the trial panel concluded that the accused had not violated DR 2-106(A) because the total fee that he

had charged to Anderson had not been excessive, even if individual billing entries may have been excessive. The Bar argues that the trial panel's statement of the legal standard is incorrect and that the accused charged an excessive fee in violation of the rule because he billed for work that he did not do, billed for his assistant's work when the fee agreement did not permit that, and billed for "inflated or excessive time."

██ We agree with the Bar that the trial panel misstated the appropriate legal standard. This court has held that a particular charge in a bill may be excessive and in violation of DR 2-106(A), even if the fee as a whole is reasonable. *See In re Paulson*, 335 Or 436, 440-41, 71 P3d 60 (2003) (concluding that accused lawyer who charged fee that client had no obligation to pay had charged excessive fee even though excessive charge appeared within bill containing other reasonable charges). However, we disagree with the Bar that the record here proves by clear and convincing evidence that the accused charged an excessive fee. We turn to the specific charges at issue.

██ The Bar argues that the charges for the conferences on January 10, 2001, and April 13, 2001, were "clearly excessive" because those conferences did not take place on those days or with the individual identified in the billing entries. As discussed above, the evidence in the record supports the accused's position that those entries were simple mistakes and that around those specific dates the accused did, in fact, have conferences with husband's lawyer (although not with husband, as the entries indicated) or with Anderson. Those charges are not "clearly excessive" within the meaning of DR 2-106(A). The Bar also argues that the accused violated the rule in charging Anderson for certain services rendered by the accused's assistant. We reject that argument for the reasons previously given.

██ ██ Finally, the Bar argues that the accused "inflated" his time for certain work, specifically, the 1.8 hours that he spent on November 30, 2000, preparing the amended dissolution petition. As discussed above, however, the trial panel found that the accused had prepared other documents on behalf of Anderson that day that he did not identify in the bill. In *Paulson*, this court stated, "The test for whether a fee

is clearly excessive is whether, 'after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee.' " 335 Or at 440 (quoting DR 2-106(B)). The evidence here falls short of that standard. The accused did not violate DR 2-106(A).

C. *Third Cause of Complaint: DR 9-101(A) and DR 9-101(D)(1)*

In its third cause of complaint, the Bar alleged that the accused (1) failed specifically to identify his lawyer trust account by use of the phrase "Lawyer Trust Account," in violation of DR 9-101(A);[15] and (2) failed to maintain an interest-bearing lawyer trust account, in violation of DR 9-101(D)(1).[16]

The trial panel found that the Bar had not established by clear and convincing evidence that the accused had violated DR 9-101(A) because the accused had made an effort to properly label his account as a "Lawyer Trust Account." The trial panel found, however, that the Bar had established by clear and convincing evidence that the accused had violated DR 9-101(D)(1) because he never reconciled his monthly statements and, therefore, never verified whether the bank was in compliance with his original instructions to set up an interest-bearing account.

The accused argues that the trial panel erred in finding that he had violated DR 9-101(D)(1) because he had instructed the bank to set up his lawyer trust account in compliance with the rule and he had been unaware that the bank, due to its own error, had not done so.

As discussed above with respect to the accused's failure to maintain client funds in a trust account in violation of DR 9-101(A), DR 9-101(D)(1) does not specify a particular mental state that the Bar must prove to establish a violation

---

[15] DR 9-101(A) provides, in part: "Trust accounts shall be specifically identified by use of the phrase 'Lawyer Trust Account.' "

[16] DR 9-101(D)(1) provides: "Each lawyer trust account shall be an interest bearing trust account in a financial institution selected by the lawyer or law firm in the exercise of reasonable care."

of that rule. Accordingly, a violation can be proved if the lawyer failed to comply with the requirements of the rule and did so either intentionally, knowingly, or negligently.

DR 9-101(A) and DR 9-101(D)(1) require lawyers to ensure that any client funds be deposited and maintained in a trust account that bears interest and that is specifically identified by use of the phrase "Lawyer Trust Account." As demonstrated by his instructions to the bank in setting up his lawyer trust account, the accused was aware of that obligation. Nevertheless, between February 2000 and April 2004, his lawyer trust account did not comply with those rules.

The accused is correct that the bank committed the initial errors in failing to establish the account as an interest-bearing account and in failing to designate the account properly as a "Lawyer Trust Account" on checks and monthly statements. Here, however, the accused's lawyer trust account failed to comply with DR 9-101(A) and DR 9-101(D)(1) from February 2000 through April 2004. The accused received a bank statement for the lawyer trust account each month within that time frame and made deposits and withdrawals from the account. A reasonable lawyer would have reviewed those monthly statements and checks and would have noticed that the trust account was not an interest-bearing account and was not properly identified as a "Lawyer Trust Account." The accused was negligent in failing, for more than four years, to bring his lawyer trust account into compliance with the rules.

We hold that the Bar has proved by clear and convincing evidence that the accused violated both DR 9-101(A) and DR 9-101(D)(1).

D. *Fourth Cause of Complaint: DR 1-102(A)(4) and DR 1-103(C)*

In its fourth cause of complaint, the Bar alleged that, based on the accused's conduct during the Bar's investigation and this proceeding, the accused (1) engaged in conduct prejudicial to the administration of justice, in violation of

DR 1-102(A)(4);[17] and (2) failed to cooperate and respond fully and truthfully to the inquiries and requests of disciplinary counsel, in violation of DR 1-103(C).[18]

The trial panel found that the Bar had established by clear and convincing evidence that the accused had violated DR 1-102(A)(4) and DR 1-103(C) because the accused had lacked any justification to withhold discovery once the trial panel had ordered him to do so and because he "unreasonably and without valid cause" refused to cooperate with numerous discovery requests from disciplinary counsel.

As an initial matter, we set forth the rules of procedure governing discovery in lawyer disciplinary proceedings. The Bar Rules of Procedure provide that "[r]equests for admission, requests for production of documents, and depositions may be utilized in disciplinary proceedings" and that the manner of discovery concerning those items "shall conform as nearly as practicable to the procedure set forth in the Oregon Rules of Civil Procedure." BR 4.5(b). Three rules of civil procedure are pertinent here: ORCP 36, which establishes the scope of discovery generally; ORCP 43,[19] which governs the production of documents; and ORCP 39, which sets out the procedures for taking depositions. ORCP 36 B(1) provides:

---

[17] DR 1-102(A) provides, in part:

"It is professional misconduct for a lawyer to:

"* * * * *

"(4) Engage in conduct that is prejudicial to the administration of justice[.]"

[18] DR 1-103(C) provides:

"A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and comply with reasonable requests of a tribunal or other authority empowered to investigate or act upon the conduct of lawyers, subject only to the exercise of any applicable right or privilege."

[19] ORCP 43 A provides, in part:

"Any party may serve on any other party a request: (1) to produce and permit the party making the request, or someone acting on behalf of the party making the request, to inspect and copy, any designated documents (including writings, drawings, graphs, charts, photographs, phono-records, and other data compilations from which information can be obtained, and translated, if necessary, by the respondent through detection devices into reasonably usable form), or to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 36 B and which are in the possession, custody, or control of the party upon whom the request is served[.]"

"For all forms of discovery, parties may inquire regarding any matter, not privileged, which is relevant to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things, and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

The accused argues that the Bar's requests for the production of documents and the Bar's questions to him during deposition sought documents and information that were privileged or otherwise protected from disclosure and that his failure to produce the requested documents and to answer the relevant questions therefore was permissible.

1. *DR 1-103(C)*

With respect to DR 1-103(C), the accused argues that the trial panel erred in finding that he had violated that rule because, in every alleged instance of misconduct, he had been exercising an "applicable right or privilege." For the reasons that follow, we conclude that the accused's objections were not justified by any applicable right or privilege.

As discussed above, the Bar's discovery requests and deposition questions related to the accused's lawyer trust account and his representation of Anderson. During this proceeding, the accused objected to those requests multiple times—in response to deposition questions, in written responses to discovery requests, and in multiple letters to the Bar and the trial panel—on various grounds, including lawyer-client privilege, client secrets, work product, and harassment.

We observe first that the rules for the conduct of lawyer disciplinary proceedings and the Oregon Rules of Civil Procedure permit a person from whom discovery is sought to object to the discovery request if the information requested is privileged. *See, e.g.,* ORCP 36 B(1) (scope of discovery does not include "privileged" matter); ORCP 39 D(3)(c) (deponent may object and decline to answer question "to preserve a

212

privilege"); ORCP 43 B (party receiving request to produce documents may object to production). When such objections are made, the rules provide procedures by which the party objecting can obtain a ruling on the objections or a party seeking discovery can obtain an order compelling discovery. *See* BR 4.5(c) (trial panel chairperson to rule on discovery disputes in lawyer disciplinary proceedings); ORCP 46 A (trial court may enter order compelling discovery). Thus, an accused lawyer, like a party to a civil action, does not necessarily engage in improper conduct or conduct prejudicial to the administration of justice simply by objecting to the production of documents or by refusing to answer questions at a deposition based on a claim of privilege. The accused lawyer is permitted to make an objection and force the Bar to seek a motion to compel or similar order from the trial panel.

■ Here, however, the Bar argues that the accused did not simply make use of applicable procedures, but rather that his objections to the Bar's discovery requests were frivolous and were made solely to delay and obstruct the disciplinary proceeding. The Bar points to multiple letters, filings, and emails that document the accused's repeated refusal to provide possible deposition dates, to produce documents, and to respond to requests for admissions. The Bar also asserts that the accused's substantive objections to certain discovery requests—primarily on the grounds of lawyer-client privilege and work product—were frivolous.

We agree with the Bar. As to the accused's responses to the Bar's discovery requests generally, the record amply demonstrates that the accused violated DR 1-103(C) by failing to "respond fully and truthfully to inquiries from and comply with reasonable requests of" the Bar and the trial panel.

We also conclude that the accused's lawyer-client and work product objections to the Bar's discovery requests were frivolous. First, the Bar's document requests did not request the production of privileged documents, but rather requested that the accused identify any documents that he asserted were privileged and the basis for the privilege. The accused never articulated any basis for the asserted privilege. He never explained why the lawyer trust account

records that the Bar sought constituted confidential communications "in furtherance of the rendition of professional legal services," such that the records might be subject to the lawyer-client privilege protected by OEC 503.

■    More significantly, the accused's objections ignore the fact that the Bar proceeding was based on Anderson's complaint. The lawyer-client privilege is a privilege of the client, not the lawyer. It would defy logic to permit the accused to assert his *client's* privilege as a basis for withholding information needed for the Bar to prosecute a complaint that the client initiated. Here, given the nature of Anderson's complaint and the rules that the Bar charged the accused with violating, there was no doubt that the documents requested were necessary to investigate and prosecute the violations charged.

The accused's position also ignores OEC 503(4)(c), which provides an exception to the lawyer-client privilege for "a communication relevant to an issue of breach of duty by the lawyer to the client * * *." Thus, even if the lawyer trust account records might be considered "communications" subject to the lawyer-client privilege, that privilege did not apply to the disciplinary proceeding growing directly out of Anderson's complaint about the accused's conduct.

We conclude that the Bar has proved by clear and convincing evidence that the accused repeatedly and intentionally violated DR 1-103(C).

2.  *DR 1-102(A)(4)*

■    This court has held that, to prove a violation of DR 1-102(A)(4), the Bar must demonstrate that (1) the lawyer engaged in "conduct," that is, the lawyer did something that he or she should not have done or failed to do something that the lawyer should have done; (2) the conduct occurred during the "administration of justice," that is, during the course of a judicial proceeding or another proceeding that was analogous to a judicial proceeding; and (3) the lawyer's conduct resulted in "prejudice," either to the functioning of the proceeding or to a party's substantive interests in the proceeding. *See In re Coggins*, 338 Or 480, 486, 111 P3d 1119 (2005) (so holding); *see also In re Haws*, 310 Or 741, 746-48, 801 P2d 818 (1990)

(setting forth test). The Bar asserts that the accused violated DR 1-102(A)(4) by, among other things, failing to comply with a June 9, 2004, order of the trial panel directing him to produce certain documents. The accused argues that the trial panel erred in finding that the first and third elements of that test were met here.

With respect to the first element, the accused contends that he did not fail to do something that he should have done, because the trial panel's June 9, 2004, discovery order was "not entirely clear" and "did not specify" exactly what records the Bar sought to discover. The accused is wrong. The Bar clearly articulated in its Request for Production of Documents (and its later motion to compel) that it sought discovery of those documents related to the accused's maintenance of his lawyer trust account and his representation of Anderson. In granting the Bar's motion, the trial panel expressly identified which of the Bar's requests it was ordering the accused to comply with. As noted above, the accused refused to comply with that order, and none of the various grounds that he asserted to justify his repeated objections was supported under applicable law. Consequently, the accused failed to do something that he should have done.

With respect to the third element, the accused argues that any alleged misconduct was not prejudicial to the administration of justice but, rather, was the product of a "contentious" and vigorous defense.

To conclude that a lawyer's conduct was prejudicial to the administration of justice under DR 1-102(A)(4), we must find that the lawyer engaged either in repeated acts causing some harm to the administration of justice or a single act that caused substantial harm to the administration of justice. *Haws*, 310 Or at 748. Here, the accused delayed his compliance with the Bar's request for copies of his lawyer trust account statements for more than 11 months. Additionally, his improper objections at his first deposition prejudiced the Bar's ability to prosecute this case expeditiously and resulted in the added time and expense of a subsequent deposition. Furthermore, due to the accused's intentional refusal to respond fully and truthfully about his failure to prepare

and maintain lawyer trust account records, the Bar was burdened with the added expense of subpoenaing records from US Bank pertaining to the accused's account. Finally, the accused admitted at his second deposition that, at some point during the Bar's investigation, he had made a conscious decision not to provide the Bar with the deposit slip reflecting a return of Anderson's $75 to his lawyer trust account. The accused's repeated actions resulted in prejudice to the conduct of this proceeding and to the interests of the Bar and the public. *See In re Boothe*, 303 Or 643, 654, 740 P2d 785 (1987) (issues in bar disciplinary proceedings directly and significantly affect members of Bar and general public). His conduct was prejudicial to the administration of justice.

We conclude that the Bar has proved by clear and convincing evidence that the accused intentionally violated DR 1-102(A)(4).

E. *Accused's Due Process Contentions*

Throughout this proceeding, the accused has contended that the failure of the pleadings to provide him with notice of the charges and facts supporting them denied him a full opportunity to defend himself and, therefore, violated his due process rights under the Fourteenth Amendment to the United States Constitution. Other than a series of conclusory statements, however, the accused does not provide any argument to support the alleged due process violations. As stated above, in response to his motion to require the initial complaint to comply with BR 4.1(c), the trial panel ordered the Bar to file an amended complaint. The Bar did so and, as discussed above, the allegations in the amended complaint related to a specific client and to specific financial and accounting issues in connection with the accused's representation of that client. Consequently, any due process concern that might have arisen from the somewhat general nature of the Bar's initial complaint—and we do not suggest that such a concern would be justified—was cured early in this proceeding. The Bar's amended complaint provided the accused with the notice that was due to him under BR 4.1(c) and the Due Process Clause. The accused's due process rights were not violated in this proceeding.

## F. *Sanctions Against the Bar*

In his final assignment of error, the accused argues that the trial panel erred in not sanctioning the Bar for its "egregious" discovery violations. Assuming (without deciding) that such an assignment of error is even permissible in cases like this, the accused's assignment here is not well-taken. The record demonstrates that the Bar complied with the trial panel's orders and with the rules of procedure throughout this proceeding. The trial panel did not err in refusing to sanction the Bar.

## III. SANCTION

Having concluded that the accused violated DR 9-101(A), DR 9-101(C)(3), DR 9-101(D)(1), DR 1-102(A)(4), and DR 1-103(C), we now must determine the appropriate sanction.

In determining the appropriate sanction, we recognize that the purpose of a sanction is not to penalize the accused, but rather to protect the public and the integrity of the legal profession. *In re Glass*, 308 Or 297, 304, 779 P2d 612 (1989). Consistently with this court's well-established methodology, we examine the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) and Oregon case law. *In re Huffman*, 331 Or 209, 223, 13 P3d 994 (2000). We first determine preliminarily the appropriate sanction by considering (1) the duty violated; (2) the accused's mental state; and (3) the actual or potential injury that the misconduct caused. ABA Standard 3.0. We then examine any aggravating or mitigating circumstances to determine whether we should adjust the preliminary sanction, and, finally, we review our prior case law for guidance in determining the appropriate sanction. *Huffman*, 331 Or at 223.

## A. *Duty Violated*

Under the ABA Standards, the accused's conduct as described above violated the following duties. First, in violating DR 9-101(A), DR 9-101(C)(3), and DR 9-101(D)(1), the accused mishandled his lawyer trust account and his client's funds, thereby failing in his duty to preserve client property. ABA Standard 4.1. Second, in violating DR 1-102(A)(4) and

DR 1-103(C), the accused failed in his duty owed as a professional to cooperate fully and truthfully with a disciplinary investigation, ABA Standard 7.0, and in his duty owed to the legal system to comply with his obligations under the disciplinary rules, ABA Standard 6.2. Additionally, because the disciplinary process serves to protect the public, the accused also violated his duty to the public by engaging in such conduct. ABA Standard 5.0; *see In re Kluge*, 335 Or 326, 349, 66 P3d 492 (2003) (so stating).

B. *Mental State*

The ABA Standards recognize three mental states: intentional, knowing, and negligent. A lawyer acts intentionally by acting with the conscious objective or purpose of accomplishing a particular result. A lawyer acts knowingly by being consciously aware of the nature or attendant circumstances of the conduct, but not having a conscious objective to accomplish a particular result. A lawyer acts negligently by failing to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation. ABA Standards at 7.

Based on the discussion above, we find that the accused acted negligently with respect to his lawyer trust account and intentionally with respect to his conduct prejudicial to the administration of justice and his failure to respond fully and truthfully during the disciplinary process.

C. *Actual and Potential Injury*

Under the ABA Standards, the injuries caused by a lawyer's professional misconduct may be either actual or potential. *See In re Williams*, 314 Or 530, 547, 840 P2d 1280 (1992) ("[A]n injury need not be actual, but only potential, in order to support the imposition of a sanction."). "Injury" is actual harm to a client, the public, the legal system, or the profession which is caused by a lawyer's misconduct. ABA Standards at 7. "Potential injury" is harm that was reasonably foreseeable at the time of the lawyer's misconduct but that ultimately did not occur. *Id.*

Here, the accused's negligent misconduct with respect to his lawyer trust account, at a minimum, caused

potential injury to Anderson, because the accused failed to maintain Anderson's funds in that account. The accused's intentional refusal to cooperate fully and truthfully with the Bar's disciplinary investigation caused actual injury to the Bar, because it unnecessarily extended the proceedings and resulted in the added expense of a subsequent deposition. Additionally, we conclude that the accused's unjustified disruption of the orderly operation of the disciplinary process also caused actual injury to the public. *See Kluge*, 335 Or at 350 (so stating under similar circumstances).

D. *Preliminary Sanction Under ABA Standards*

The ABA Standards suggest that a reprimand is an appropriate sanction for the accused's negligent misconduct concerning his lawyer trust account and client funds. ABA Standard 4.13. With respect to the accused's refusal to cooperate fully and truthfully during the disciplinary investigation, the ABA Standards suggest that a suspension is an appropriate sanction for that misconduct. ABA Standard 6.22; ABA Standard 7.2. We now consider the applicable aggravating and mitigating factors that might affect our determination of the appropriate sanction.

E. *Aggravating and Mitigating Factors*

"[A]ggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed." ABA Standard 9.21. The Bar first argues that the aggravating factor of prior disciplinary offenses, ABA Standard 9.22(a), is present here because the accused had accepted a letter of admonition in May 2002, in which the State Professional Responsibility Board (SPRB) concluded that he had violated DR 2-110(A)(2) (requiring lawyer to deliver to client property to which client is entitled) and DR 2-106(A) (prohibiting excessive fee). At its discretion, the SPRB may issue a letter of admonition to a lawyer against whom a complaint has been filed with the Bar, upon a determination that probable cause exists to believe that misconduct has occurred. BR 2.6(c)(1). The letter is issued in lieu of referring the complaint either to a Local Professional Responsibility Committee (LPRC) for investigation or to the Bar for filing a formal complaint, provided that the lawyer "accepts" the admonition. *Id.*

The allegedly improper conduct involved in the letter of admonition related to the accused's alleged failure to return the unearned part of a retainer to a client and charging an excessive fee. We decline to consider the letter of admonition as an aggravating factor here, as the client complaint that led to the letter of admonition was not made until January 2002 and the letter of admonition itself was not issued until May 2002. The similar conduct of the accused in this proceeding predated the letter of admonition and the client complaint that led to the letter.

Second, the Bar asserts, and we agree, that the accused's long delay in producing the lawyer trust account statement for November 2001 and the deposit slip reflecting that he had redeposited Anderson's $75—both of which tended to prove the allegations against him—constituted "bad faith obstruction of the disciplinary proceeding." ABA Standard 9.22(e). Indeed, the trial panel concluded—and the record demonstrates—that the accused knowingly made false statements to the trial panel during the proceeding, including representing that he did not have certain lawyer trust account records, when, in fact, he did have the records and later offered them as evidence at the proceeding. The accused's repeated refusal to cooperate with the Bar in other aspects of its investigation and formal proceedings further supports our finding of this aggravating factor. Finally, the accused's misconduct in this case involves multiple offenses. ABA Standard 9.22(d). We find no mitigating factors.

F.  *Oregon Case Law*

Our preliminary analysis under the ABA Standards suggests that a reprimand may be an appropriate sanction for certain of the accused's violations, while a suspension may be appropriate for other violations. Considering the accused's misconduct as a whole, some period of suspension is appropriate. We now consider this court's case law, focusing on the violations of DR 1-102(A)(4) and DR 1-103(C), for which this court often imposes a suspension.

In *In re Eadie*, 333 Or 42, 36 P3d 468 (2001), the accused lawyer committed multiple ethical violations involving four different client matters, including conduct prejudicial to the administration of justice and intentional misrepresentations. After finding several aggravating factors, but

only one mitigating factor (cooperation with Bar during initial investigation), and actual or potential injury to more than one client, this court imposed a three-year suspension. *Id.* at 72. In other cases, this court has imposed two-year suspensions when it found that a lawyer had failed to respond truthfully and fully in disciplinary proceedings in addition to other serious misconduct. *See In re Gallagher*, 332 Or 173, 190, 26 P3d 131 (2001) (accused repeatedly lied to Bar and LPRC in violation of both DR 1-102(A)(3) and DR 1-103(C)); *Huffman*, 331 Or at 229 (accused made misrepresentations in motions filed with court in violation of both DR 1-102(A)(3) and DR 1-103(C)); *In re Staar*, 324 Or 283, 292, 924 P2d 308 (1996) (accused failed to cooperate with Bar, engaged in misrepresentation, and knowingly made false statements of fact under oath resulting in prejudice to administration of justice).

Here, the accused's misconduct was less egregious than that involved in *Eadie*. In this case, the accused's ethical violations—albeit several—involved only one client. We also view the accused's misconduct here as less egregious than the misconduct in the other cases just described, where this court imposed two-year suspensions. Although the accused's obstructionist tactics during the disciplinary proceeding were ongoing and serious, we have concluded that the Bar did not prove by clear and convincing evidence that the accused made knowing misrepresentations to Anderson.

In *In re Eakin*, 334 Or 238, 259, 48 P3d 147 (2002), this court suspended a lawyer for 60 days for mistakenly removing a client's money from the lawyer trust account, failing to maintain adequate lawyer trust account records, and failing to return property to the client. In contrast to this case, however, the accused's conduct in *Eakin* was mitigated by her cooperation with the Bar. 334 Or at 258. Here, the accused failed to cooperate with the Bar—indeed, he did so repeatedly, in violation of DR 9-102(A)(4) and DR 1-103(c).

In our view, this case falls somewhere between *Eadie* and similar cases—where suspensions of two or three years were imposed for conduct prejudicial to the administration of justice and failure to cooperate with the Bar, as well as misrepresentation under DR 1-102(A)(3)—and *Eakin*. Here,

the accused's violation of DR 1-103(C) pervaded the disciplinary proceeding. Because the public protection provided by the entire disciplinary process is undermined when a lawyer accused of violating another disciplinary rule violates DR 1-103(C) by failing to cooperate in the investigatory process, we emphasize the seriousness with which this court views that failure. *See Glass*, 308 Or at 305 (stating that court does not view violation of DR 1-103(C) "lightly" because public will lack confidence in disciplinary process unless DR 1-103(C) is enforced). "Indeed, the disciplinary system likely would break down if the mandatory cooperation rule set forth in DR 1-103(C) were not in place, given the lack of incentive for a lawyer to cooperate with a Bar investigation if that lawyer had the option of not cooperating." *In re Miles*, 324 Or 218, 222-23, 923 P2d 1219 (1996).

Considering together the ABA Standards, the applicable aggravating factors, and this court's case law, we conclude that the appropriate sanction for the accused's misconduct is a suspension from the practice of law for one year.[20]

The accused is suspended from the practice of law for one year, commencing 60 days from the effective date of this decision.

---

[20] As noted, the trial panel ordered that the accused be suspended for three years and that, upon reinstatement, he be subject to certain terms of probation. This court recently stated that it did not favor probation. *See In re Obert*, 336 Or 640, 656, 89 P3d 1173 (2004) ("[W]e do not favor probationary terms unless they are the result of a stipulation. When a lawyer's misconduct is sufficiently serious to warrant a lengthy probationary period, the uncertainties of the monitoring process lead us to prefer, when appropriate, imposition of a sanction involving a concrete period of suspension."). Moreover, the probationary period here would have commenced after reinstatement, and we question whether the Bar would be able adequately to monitor the accused's compliance with the terms of probation following his possible reinstatement after a three-year suspension. In our view, the burden placed on the accused to demonstrate the requisite good moral character and general fitness to practice law, should he apply for reinstatement under BR 8.1(a)(iv) following the suspension imposed here, adequately will protect the public and the integrity of the profession.