Submitted on the record and briefs June 15, accused suspended from the practice of law for six months commencing on the effective date of this decision July 29, reconsideration denied September 21, 1993

In re the Matter of
Reciprocal Discipline of

John J. DEVERS,
*Accused.*

(OSB 89445; SC S39997)

855 P2d 617

John J. Devers, Portland, filed an answer *in propria persona.*

Susan Roedl Cournoyer, Assistant Disciplinary Counsel, Oregon State Bar, Lake Oswego, filed a reply brief.

PER CURIAM

## PER CURIAM

This is a lawyer discipline proceeding involving "reciprocal discipline" under Bar Rule of Procedure (BR) 3.5. The accused is a lawyer who was licensed to practice law in both Oregon and Michigan during the years relevant to this proceeding. He presently lives in Oregon. In 1992, the accused was suspended from the practice of law in Michigan for four months for unethical conduct in three matters, which we discuss more fully below. Pursuant to BR 3.5, the State Professional Responsibility Board has recommended that the accused be suspended from the practice of law in Oregon for his unethical conduct as a lawyer in Michigan. We suspend the accused from the practice of law for six months.

When the Oregon State Bar files a decision of another jurisdiction with this court,[1] accompanied by a recommendation for discipline "based on the discipline in the [other] jurisdiction," BR 3.5(a), the accused lawyer may file an answer. BR 3.5(c) provides that the answer may "discuss[] the following issues:

"(1) Was the procedure in the jurisdiction which disciplined the attorney lacking in notice or opportunity to be heard?

"(2) Should the attorney be disciplined by the court?"

The accused filed an answer discussing both of those points. Accordingly, we will consider each question.

We begin with the procedural question. The Michigan proceedings began with the filing of formal complaints. Each complaint described the alleged misconduct in detail, and each complaint was served on the accused by mail. The applicable procedural rules gave the accused 21 days within which to answer and provided for a hearing. The accused failed to respond to all but one of the complaints and failed to appear at the scheduled hearings, of which he had notice. The hearings proceeded in his absence.

The Michigan trial panels concluded that the accused had violated several sections of the Michigan Rules of Professional Conduct. The trial panels noted that the accused had a

---

[1] The accused does not challenge the authenticity of the Michigan decisions that imposed discipline.

prior disciplinary history consisting of an admonishment in 1979 and orders of reprimand in 1987 and 1988. The trial panels also found that the accused exhibited an "evidently blatant disregard for the disciplinary system." After considering those factors, Michigan imposed a 121-day suspension for one matter and a 90-day suspension for the other two matters together. The suspensions ran concurrently, effective December 9, 1992.

■     The accused concedes that he received notice of the charged misconduct when he received the formal complaints and that he received notice of the scheduled hearings. He also agrees that the Michigan rules, in the abstract, provided him with an opportunity to be heard. His contention is that he did not in fact have an opportunity to be heard. The accused asserts that the Michigan trial panels violated the applicable rules by deciding to proceed without him when he did not appear at the scheduled hearings or answer the Michigan Bar's complaints.

The existence of a procedure for default, in cases of failure to respond after adequate notice, does not offend due process. *Boddie v. Connecticut*, 401 US 371, 378, 91 S Ct 780, 28 L Ed 2d 113 (1971); *Windsor v. McVeigh*, 93 US 274, 278, 23 L Ed 914 (1876). Our review of the record satisfies us that the Michigan procedural rules meet the requirements of due process and that the Michigan trial panels complied with all applicable procedural rules. Indeed, the accused was accommodated repeatedly. For example, in one case, a default order that had been entered properly was set aside, and two continuances were granted at the accused's request. The accused received constitutionally sufficient notice and opportunity to be heard in the Michigan disciplinary proceedings. He simply failed to take advantage of the opportunity.

■■     We turn next to the question whether the accused should be disciplined. BR 3.5(b) provides that the decision of another jurisdiction "shall be sufficient evidence" that the accused lawyer "committed the misconduct described therein." That is, in a reciprocal discipline proceeding, the accused has no opportunity to challenge in Oregon the

underlying factual findings of the other jurisdiction.[2] In that respect, a proceeding under BR 3.5 differs from other contested disciplinary proceedings. The facts described below are summarized from the findings of the Michigan trial panels.

A further word is in order about the analytical framework that we use. In the usual reciprocal discipline case, the acts of an accused violate the disciplinary rules of both jurisdictions. In determining an appropriate sanction, however, this court focuses on the accused's misconduct under the Oregon disciplinary rules. We do so because our choice of a sanction vindicates the judicial authority of this jurisdiction, not of the one in which the earlier discipline occurred.

Accordingly, we consider whether the conduct of the accused violated disciplinary rules in this state. In his answer, the accused does not dispute that his conduct violated Oregon disciplinary rules. We agree that his conduct violated Oregon disciplinary rules, as follows.

### (1) *Kologek Matter*

Mr. and Mrs. Kologek retained the accused to assist in resolving a partnership matter for the husband and a pension matter for the wife. He failed to take appropriate actions to pursue those matters, failed to return the Kologeks' files when asked, and failed to respond to the Michigan Bar's investigation.

By failing to take appropriate actions to pursue the matters entrusted to him, the accused violated DR 6-101(A) and (B) (a lawyer must provide competent and diligent representation). By failing to return the files when asked, the accused violated DR 2-110(A)(2) (a lawyer shall not withdraw from employment without delivering to client all papers to which client is entitled) and DR 9-101(B)(4) (a lawyer must deliver client's property in lawyer's possession if client asks and is entitled to property). By failing to respond to the Michigan Bar's investigation, the accused violated DR

---

[2] BR 3.5(e) provides that this court, in its discretion, may refer a reciprocal discipline matter to the Disciplinary Board "for the purpose of taking testimony on the issues set forth in BR 3.5(c)(1) and (2)." Neither the accused nor the Bar has asked us to exercise that discretion, and our review of the record does not suggest that we should do so.

1-103(C) (a lawyer who is the subject of a disciplinary investigation must cooperate with the investigation).

### (2) *Fenn Matter*

The accused initiated a probate proceeding in the Fenn estate. He failed to file a timely inventory, resulting in the suspension of the temporary personal representative. He then filed two defective inventories, failed to give notice to the heirs of the first and final account, and failed to take appropriate steps to close the estate. The accused also collected a $2,775 fee from the heirs but did not disclose the fee to the probate court. The Michigan disciplinary body concluded that the fee was illegal and clearly excessive. Again, the accused failed to respond to the Michigan Bar's investigation.

By filing late and defective inventories, the accused violated DR 6-101(A) and (B). By failing to disclose the fee to the probate court, the accused violated DR 1-102(A)(4) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice). By charging an illegal and clearly excessive fee, the accused violated DR 2-106(A) (a lawyer shall not charge an illegal or clearly excessive fee). By failing to respond to the Michigan Bar's investigation, the accused violated DR 1-103(C).

### (3) *Beeker Matter*

Mrs. Beeker retained the accused to draft a will and quitclaim deed and paid him $50. The accused failed to return Mrs. Beeker's file and deed when she asked for them and failed to respond to her telephone calls and letters for about a year and a half. The accused also failed to respond to the Michigan Bar's investigation.

By failing to return the client's file and deed, the accused violated DR 2-110(A)(2) and DR 9-101(B)(4). By failing to return the client's telephone calls and letters, the accused violated DR 6-101(B). By failing to respond to the Michigan Bar's investigation, the accused violated DR 1-103(C).

In each matter, the accused also violated DR 1-102(A)(1) (it is professional misconduct for a lawyer to violate the disciplinary rules in the Oregon Code of Professional Responsibility).

Finally, we address the sanction. The accused asserts that his conduct does not warrant a suspension. We disagree.

In deciding on an appropriate sanction, in a reciprocal discipline case as in any other, we consider the American Bar Association "Standards for Imposing Lawyer Sanctions" (1986, amended 1992) (ABA Standards). ABA Standard 3.0 sets forth four factors to be considered in determining the appropriate sanction: the ethical duty violated, the lawyer's mental state, the actual or potential injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

The accused violated duties owed to his clients, the legal system, and the profession.

The accused acted at least knowingly, that is, with a "conscious awareness of the nature or attendant circumstances of [his] conduct." ABA Standards at 7. The accused was aware of his responsibility in representing his clients, of the fees paid for his services, of his failures to take appropriate legal actions for his clients, and of his clients' attempts to contact him and gain possession of their files. He also was aware of, but disregarded, the Michigan Bar's requests for cooperation in investigating those matters.

The accused caused injuries to his clients. His failure to cooperate with the Michigan Bar also injured the administration of the discipline process of that state.

Aggravating factors are a prior record of discipline, ABA Standard 9.22(a), a pattern of misconduct and multiple offenses, ABA Standard 9.22(c) and (d), and substantial experience in the practice of law, ABA Standard 9.22(i).

There is one mitigating factor, imposition of another penalty or sanction. ABA Standard 9.32(k). Michigan imposed a four-month suspension from the practice of law for the same conduct that we consider here.[3]

The ABA Standards call for suspension when a lawyer knowingly fails to perform services for a client and causes injury or potential injury, or when a lawyer engages in a

---

[3] It is not clear from the record whether the accused was practicing law or residing in Michigan during that period of suspension.

pattern of neglect and causes injury or potential injury. ABA Standard 4.42(a) and (b). Suspension also is appropriate when a lawyer knowingly engages in conduct that violates a duty owed to the profession and thereby causes injury or potential injury. ABA Standard 7.2.

We conclude that a six-month suspension is the proper sanction to apply in this case.

The accused is suspended from the practice of law for six months commencing on the effective date of this decision.