Submitted on the record September 24, 1997; reassigned February 3, accused suspended from the practice of law for 30 days March 26, 1998

In the Matter of the Reciprocal Discipline of

## GIMI D. PAGE,
*Accused.*

### (OSB 97-28; SC S44396)

955 P2d 239

Christopher R. Hardman, Portland, filed the answer for the accused.

Jeffrey D. Sapiro, Disciplinary Counsel, Lake Oswego, filed the reply for the Oregon State Bar.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Graber, Durham, and Kulongoski, Justices.*

PER CURIAM

---

* Fadeley, J., retired January 31, 1998, and did not participate in this decision.

## PER CURIAM

This is a reciprocal lawyer discipline proceeding governed by Rule of Procedure (BR) 3.5. The accused, who is admitted to practice in both Oregon and Washington, entered into a stipulation for discipline with the Washington State Bar Association (WSBA). Under that stipulation, based upon agreed facts, the accused was formally reprimanded. The State Professional Responsibility Board of the Oregon State Bar (the Bar) considered the matter, pursuant to BR 3.5(a), and has recommended that this court suspend the accused from the practice of law in Oregon for 180 days.

The accused filed an answer in this court, BR 3.5(c), contending that she should not be subject to any further discipline in Oregon. Alternatively, she asks that we impose a sanction no more severe than a public reprimand.[1] For the reasons stated below, we conclude that, under Oregon law, a 30-day suspension is the appropriate sanction in this case.

The stipulated facts are as follows. The accused represented husband in a marital dissolution proceeding in Washington. At a settlement conference in 1991, the parties agreed to most of the issues in dispute, including that husband owed wife about $3,600 in unpaid child support. In 1993, the accused drafted several documents to finalize the dissolution and sent them to opposing counsel for approval and signature. The accused was not available when opposing counsel called her to discuss some changes. She conveyed a message to opposing counsel, however, that he should make the appropriate changes and return the documents. Opposing counsel made the changes, and he and wife signed the documents. He then returned the signed documents to the accused with a letter stating that she should call him if she had any questions about the changes.

Upon receipt of the signed documents, the accused discussed opposing counsel's changes with husband, who told her to change the documents back to their original wording.

---

[1] In her answer, the accused did not raise a procedural challenge to the disciplinary proceeding in Washington, as permitted by BR 3.5(c)(1). *See generally In re Devers*, 317 Or 261, 263-64, 855 P2d 617 (1993) (addressing such a procedural challenge).

The accused then made several changes to the signed documents, using white correction fluid in one instance to avoid disturbing opposing counsel's signature. Her changes consisted of the following: (1) changing the child support arrearage figure from $5,308.50 to $3,602; (2) adding a paragraph to one document requiring wife to notify husband if she changed their child's residence; and (3) changing wording in the final decree relating to husband's ability to take the child out of the jurisdiction.

The accused did not notify opposing counsel about her changes. Instead, she submitted the signed, altered documents to the court, which approved the documents and entered a dissolution judgment. Upon receipt of a conformed copy of the altered documents and dissolution judgment, opposing counsel notified the accused that he disagreed with her changes and that he had prepared a stipulated order to set aside the judgment. The accused signed the stipulated order, the court approved it, and the case was set for retrial. A fee dispute later arose concerning opposing counsel's fees incurred in connection with the altered documents. The trial court ordered each side to pay its own fees.

The accused admitted in the stipulation that she had changed the documents without notifying opposing counsel and had presented them to the court as containing agreed terms, without opposing counsel's approval. In the accused's view, her changes more accurately reflected the parties' original agreement.

The stipulation described the accused's misconduct as follows:

"19. By presenting the changed orders to the court as agreed orders, [the accused] made a false statement of material fact and violated [Washington Rule of Professional Conduct] RPC 3.3(a)(1) and RPC 8.4(c) and (d).

"20. [The accused's] conduct in not informing the tribunal that she had made changes to the pleadings after the opposing counsel signed them violated RPC 3.3(f)."[2]

---

[2] RPC 3.3(a) provides, in part:

"A lawyer shall not knowingly:

"(1) Make a false statement of material fact or law to a tribunal[.]"

As relevant, Oregon's disciplinary rules do not vary significantly from the Washington rules. *See* DR 7-102(A)(5) (in representing a client, a lawyer shall not knowingly make a false statement of fact); DR 1-102(A)(3) and (4) (it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation, or conduct that is prejudicial to the administration of justice). *See also* ORS 9.460(2) (a lawyer never shall seek to mislead the court by false statement of fact). There is no precise Oregon equivalent to RPC 3.3(f), however.[3]

■ As this court explained in *In re Devers*, 317 Or 261, 264-65, 855 P2d 617 (1993), a reciprocal discipline case differs from an ordinary discipline case, in that the accused lawyer cannot challenge the underlying factual findings entered by another state concerning the misconduct at issue. *See also* BR 3.5(b) ("A copy of the judgment, order or determination of discipline [from another jurisdiction] shall be sufficient evidence for the purpose of this rule that the attorney committed the misconduct described therein."). When determining whether discipline is warranted in Oregon, however, this

---

RPC 8.4 provides, in part:

"It is professional misconduct for a lawyer to:

"* * * * *

"(c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

"(d) Engage in conduct that is prejudicial to the administration of justice[.]"

RPC 3.3(f) provides:

"In an ex parte proceeding, a lawyer shall inform the tribunal of all relevant facts known to the lawyer that should be disclosed to permit the tribunal to make an informed decision, whether or not the facts are adverse."

[3] The accused cites DR 7-106(B)(1) (a lawyer shall disclose controlling legal authority) as somewhat analogous to RPC 3.3(f); the Bar cites DR 7-110(B) (governing *ex parte* communications). In our view, neither of those rules precisely speaks to the same type of misconduct contemplated by RPC 3.3(f), which is substantially identical to the American Bar Association's Model Rule 3.3(d). *See* American Bar Association's *Annotated Model Rules of Professional Conduct*, 307 (3d ed 1996) (setting out Model Rule 3.3(d)). We do note, however, that the broad prohibition against misrepresentation set out in DR 1-102(A)(3), which is identical to RPC 8.4(c), as well as the text of ORS 9.460(2), encompass misrepresentation in the *ex parte* context. *See In re Greene*, 290 Or 291, 620 P2d 1379 (1980) (a lawyer who engaged in misrepresentation in an *ex parte* proceeding violated *former* DR 1-102(A)(4), now DR 1-102(A)(3), and *former* ORS 9.460(4), now ORS 9.460(2)).

court treats a reciprocal discipline case the same as any other discipline case:

> "In the usual reciprocal discipline case, the acts of an accused violate the disciplinary rules of both jurisdictions. In determining an appropriate sanction, however, this court focuses on the accused's misconduct under the Oregon disciplinary rules. We do so because our choice of a sanction vindicates the judicial authority of this jurisdiction, not of the one in which the earlier discipline occurred." *Devers*, 317 Or at 265.

When conducting a reciprocal discipline proceeding, this court has two choices: It can proceed solely upon the basis of the record made in the other state, or it can direct that a different factual record be made in Oregon.[4] If the court follows the former course—as we have in this case— then it generally accepts the other state's factual findings. That is particularly true when the accused lawyer has entered into a stipulation with the other state, as the accused did here. In this case, then, our task is to determine the appropriate sanction in Oregon, if any, based upon the stipulation entered in Washington.

██     In all lawyer discipline cases, when determining the appropriate sanction, we consider the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) and Oregon case law. *In re Leonhardt*, 324 Or 498, 509, 930 P2d 844 (1997); *Devers*, 317 Or at 267. The ABA Standards require consideration of the following factors: (1) the lawyer's mental state at the time of the misconduct; (2) the nature of the ethical duty violated; (3) the injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors. ABA Standard 3.0.

██     The central issue here is the accused's mental state at the time of her misconduct. The stipulation did not specifically state whether the accused acted with intent, knowledge, or negligence when she engaged in the misconduct at issue.

---

[4] BR 3.5(e) provides, in part, that this court, "in its discretion, may refer the matter to the Disciplinary Board * * * for the purpose of taking testimony on the issues set forth in BR 3.5(c)(1) and (2) [*i.e.*, challenges to the other state's disciplinary procedure and the imposition of discipline in Oregon]."

*See* ABA Standards at 5 (identifying the possible mental states).[5] However, by citing the following standards from the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986), the stipulation impliedly assumed that the accused acted with either "knowledge" or "negligence" when she engaged in the misconduct at issue:

> "6.13 Reprimand is generally appropriate when a lawyer is *negligent* either in determining whether statements or documents are false or in taking remedial action when information is being withheld, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding. * * *

> "5.13 Reprimand is generally appropriate when a lawyer *knowingly* engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law."[6] (Emphasis added.)

Before this court, the accused admits that she knowingly altered the signed documents, but argues that she negligently filed the altered documents with the court for approval. In our view, however, the accused's actions demonstrate that she acted with knowledge when she altered the documents *and* when she filed them with the court. The

---

[5] The ABA Standards define the three mental states as follows:

" 'Intent' is the conscious objective or purpose to accomplish a particular result.

" 'Knowledge' is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result.

" 'Negligence' is the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." ABA Standards at 7.

[6] The findings of guilt contained in the stipulation do not illuminate fully whether the WSBA and the accused stipulated that the accused acted with a particular mental state. For example, by stipulating to the violation of RPC 3.3(a), which requires that a lawyer *knowingly* make a false statement of material fact, the accused agreed that she knowingly made such a statement. However, RPC 8.4(c) does not require that a lawyer *knowingly* engage in misrepresentation. *See Matter of Petersen*, 120 Wash 2d 833, 850, 846 P2d 1330 (1993) (a lawyer who engaged in negligent misrepresentation violated RPC 8.4(c)). *Compare In re Jones*, 326 Or 195, 198, 951 P2d 149 (1997) (misrepresentation under DR 1-102(A)(3) requires, at the least, that a lawyer act with knowledge).

accused purposefully made three material alterations to the documents, over the signatures of opposing counsel and his client, with the clear understanding that opposing counsel did not concur in those changes. Despite opposing counsel's request that the accused contact him if she had any questions, she filed the altered documents with the court for approval without notifying opposing counsel. As noted earlier, the accused thought that her changes better reflected the parties' original agreement. In filing the documents, however, the accused represented to the court that the documents contained terms agreed upon by both parties, when she knew that to be false. In short, given the accused's actions, we conclude that she acted, at the least, with "knowledge" under the ABA Standards.

The stipulation was silent as to the nature of the duty violated and the injury caused by the accused's misconduct. We conclude that the accused violated her duty to the legal system when she knowingly filed the altered documents with the court. *See* ABA Standard 6.1 (discussing that duty); *see also In re Jones*, 326 Or 195, 199, 951 P2d 149 (1997) (a lawyer who filed documents containing false statements violated his duty to the legal system). As to injury, the accused's misconduct harmed the legal system, in the form of time and expense required to set aside the original dissolution judgment. *See In re Hawkins*, 305 Or 319, 326, 751 P2d 780 (1988) (litigation resulting from the lawyer's misconduct harmed the legal system by resulting in expense to the system and to taxpayers). The accused also harmed opposing counsel's client, because the client had to pay the additional attorney fees incurred as a result of the accused's misconduct.

The accused and the WSBA stipulated that no aggravating factors applied to the accused's misconduct. *See* ABA Standard 9.2 (listing aggravating factors). They further stipulated that two mitigating factors applied: The absence of a prior disciplinary record and inexperience in the practice of law.[7] ABA Standards 9.32(a) and (f). An additional mitigating factor, which always will exist in a reciprocal discipline proceeding, is that the accused already has been disciplined

---

[7] The accused had been practicing law for about two years when she engaged in the misconduct at issue here.

in another state for the same misconduct at issue here. ABA Standard 9.32(k).

■        The ABA Standards suggest that, in the absence of any aggravating or mitigating factors, a suspension would be the appropriate sanction here:

> "Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court * * * and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding." ABA Standard 6.12.

A suspension also is appropriate under this court's case law when a lawyer knowingly misrepresents facts to a court. Just recently, this court imposed a 120-day suspension upon a lawyer who, among other misconduct, knowingly altered a signed document and filed that document with the court, in violation of DR 1-102(A)(3) and (4), and DR 7-102(A)(5). *In re Morris*, 326 Or 493, 953 P2d 387 (1998). This court also has imposed a 45-day suspension upon a lawyer who violated DR 1-102(A)(3) and (4) when he knowingly had his client sign blank documents that contained perjury clauses and then filed the completed documents with the court. *Jones*, 326 Or 195. In *Jones*, this court noted that a 30-day suspension would have been appropriate, had it not been for the lawyer's prior disciplinary record. 326 Or at 202. Similarly, in *In re Walker*, 293 Or 297, 647 P2d 468 (1982), this court imposed a 30-day suspension upon a lawyer who knowingly misrepresented the status of a probate estate to the court.

■        Our case law further demonstrates the gravity with which this court views a lawyer's misrepresentation to a court. In *In re Greene*, 290 Or 291, 297, 620 P2d 1379 (1980), which involved a lawyer's intentional failure to disclose relevant facts, this court stated:

> "We view the violation of the disclosure requirements of ORS 9.460[(2)] and [DR] 1-102(A)[(3)] as a serious matter, particularly in the context of an *ex parte* presentation to the judge. * * * Our experience has been [that] all judges regularly rely upon the candor, honesty and integrity of the lawyer in handling *ex parte* matters which are presented to

them. * * * Judges must be able to rely upon the integrity of the lawyer."

After noting that the lawyer in *Greene* had family problems and had acted without a selfish motive, the court imposed a 60-day suspension. *Id.* at 298-99.

Consistent with the foregoing analysis under the ABA Standards and Oregon case law, we conclude that a suspension, rather than a reprimand, is appropriate in this case. Given all the relevant considerations, the suspension here should be the same length as the suspension imposed in *Walker*. Accordingly, we suspend the accused for 30 days.

The accused is suspended from the practice of law for a period of 30 days commencing on the effective date of this decision.