Argued and submitted September 16, respondent disbarred November 19, 2020

In re Complaint as to the Conduct of
CHRISTOPHER K. SKAGEN,
OSB No. 911020,
*Respondent.*
(OSB 18149) (SC S066706)

476 P3d 942

Respondent was struck from New Zealand's Roll of Barristers and Solicitors by the High Court of New Zealand Wellington Registry in August 2016 based on misconduct respecting two clients and his significant disciplinary history. The Oregon State Bar brought a reciprocal disciplinary action against the respondent, alleging that his misconduct in New Zealand constituted multiple violations of the Rules of Professional Conduct. A trial panel of the Disciplinary Board found that the respondent had committed the charged violations, and it concluded that respondent should be disbarred. *Held*: On *de novo* review, the court concluded that respondent was afforded due process in the New Zealand proceeding, that the misconduct for which respondent was disciplined in New Zealand is conduct that should subject a lawyer to discipline in Oregon, and that imposing the same sanction—disbarment—would not result in a grave injustice or be offensive to public policy.

Respondent is disbarred.

En Banc

On review of the decision of a trial panel of the Disciplinary Board.

Christopher K. Skagen, Wellington, New Zealand, argued the cause and filed the brief on behalf of respondent.

Susan R. Cournoyer, Assistant Disciplinary Counsel, Tigard, argued the cause and filed the briefs on behalf of the Oregon State Bar.

PER CURIAM

Respondent is disbarred.

## PER CURIAM

This is a reciprocal discipline review proceeding conducted under Oregon State Bar Rule of Procedure (BR) 3.5. Respondent, Christopher K. Skagen, was licensed to practice law in New Zealand and in Oregon during the years relevant to this proceeding. He was struck from New Zealand's Roll of Barristers and Solicitors by the High Court of New Zealand Wellington Registry (High Court) in August 2016 based on misconduct respecting two clients and his significant disciplinary history. That action was the equivalent of disbarment in Oregon. The Oregon State Bar (the Bar) then petitioned the Bar's Disciplinary Board for reciprocal disbarment, alleging that respondent's misconduct in New Zealand constituted multiple violations of the Oregon Rules of Professional Conduct (RPC). A trial panel of the Disciplinary Board was convened, and the matter went to a hearing in January 2019. The trial panel issued an opinion, concluding that respondent should be reciprocally disbarred in Oregon as a result of his misconduct in New Zealand. Respondent now appeals that decision, which we review *de novo*. ORS 9.536(2); BR 10.6. For the reasons set out below, we agree with the trial panel's decision that respondent should now be disbarred in Oregon.

## I.   FACTS

### A.   *Oregon Bar Admission and Prior Oregon Discipline*

On *de novo* review, the court finds the following facts. Respondent went to law school in New Zealand but moved to Oregon shortly after graduating. He was admitted to practice law in Oregon in 1991. In the years following, respondent was subject to disciplinary proceedings twice in Oregon. In 2006, he was suspended from the practice of law for one year for failing to maintain unearned fees in trust, failing to account for client funds in his possession, failing to maintain an interest-bearing trust account, engaging in conduct prejudicial to the administration of justice, and failing to cooperate with the Bar's investigation into his conduct.[1] *In re Skagen*, 342 Or 183, 149 P3d 1171 (2006).

---

[1] The misconduct leading to the 2006 discipline took place from 2000 to 2002.

In 2008, a trial panel in Oregon found that respondent had committed 22 client trust fund violations in 20 different client matters over a one-year period; the violations were based on his failures to deposit and maintain in trust unearned fees paid in advance. The trial panel suspended respondent from the practice of law for 18 months for that misconduct.[2] *In re Skagen*, 22 DB Rptr 292 (2008).

## B.  *Reciprocal Discipline in New Zealand*

Respondent moved to New Zealand during the pendency of the second Oregon disciplinary proceeding. In 2008, respondent was subject to reciprocal censure in New Zealand based on the 2006 Oregon discipline matter, and the New Zealand Law Society (equivalent to the Bar in the United States) ordered him to pay approximately NZ$8,000 in costs. In 2010, respondent applied to renew his membership in the Law Society. Because he had not paid the cost award, he was required to enter into an agreement to make payments on that obligation in the amount of NZ$150 per month as a condition of his license renewal. He then began practicing law in New Zealand. He made only one of the required monthly payments, but he continued to practice law.

## C.  *Licensing and Client Representation in New Zealand*

Respondent practiced as a barrister in New Zealand from 2010 to 2011. In February 2011, respondent was retained by client E to represent him in a divorce proceeding. Respondent met with E and advised E that he would charge a lump sum for the work and that E would need to see a solicitor—known as an instructing solicitor—before signing the retainer contract.[3] Following that meeting, respondent sent E an invoice and his terms of engagement. The invoice set out the scope of the work to be performed and required an initial payment in the amount of NZ$4,100, which was to be half the total fee ultimately due. E paid that amount, and

---

[2] The misconduct leading to the 2008 discipline took place in 2005, before this court's decision in the earlier matter, which factored into the trial panel's sanction determination.

[3] In New Zealand, a barrister may not represent a client without an instruction—or referral—from a solicitor.

respondent deposited it in his private account. The terms of engagement specified that the instructing solicitor would be Kevin Smith. When respondent and E met with Smith, however, they learned that Smith had already discussed the matter with E's wife and, therefore, could not act as E's instructing solicitor. Respondent and E dispute what happened next. E averred that respondent did not answer his emails after that meeting, while respondent claimed that he explained to E that he would have to find a new instructing solicitor before respondent could perform any legal services for him and then did not hear from E again. In any case, E hired another firm to represent him in the matter and, in March 2011, E's new lawyer sent respondent a letter advising respondent that E wished to terminate the representation. That letter also demanded that respondent release E's file, provide an itemized bill for costs and work performed, and refund the unearned part of the fee that E had paid him. Respondent initially promised to repay the fee in full but ultimately informed E that he could not do so because of his precarious financial position. He did not refund the unearned fee.

In April 2011, the New Zealand Law Society Lawyers Complaint Service sent respondent a letter reminding him that he had not fulfilled his obligation to make monthly payments on the 2008 costs award as a condition of his license renewal. The letter noted that licenses must be renewed by July 1, and it warned respondent that, under New Zealand's disciplinary rules, the Law Society may take into account a lawyer's failure to pay when determining whether a lawyer is a "fit and proper person" to hold a license. The letter demanded payment of the entire amount due by May 5, 2011. Respondent did not respond.

In a second letter, dated June 23, 2011, the New Zealand Law Society Fitness for Practice Committee informed respondent that it provisionally had concluded that his failure to respond or to pay constituted "reasonable grounds for declining to renew" his license; it invited him to submit a response.

On June 29, 2011, respondent submitted a response claiming not to have received the first letter and asserting

that he had failed to pay the amount he owed because he had decided "to place business growth above [his] responsibility to pay [the amount owed] and did not consult the Law Society about that decision." He further explained that he did not believe that nonpayment rendered him unfit as a practitioner and that a finding of unfitness would devastate his prospects for continuing his life as a lawyer. He offered to begin paying NZ$300 per month beginning in July 2011.

The Fitness Committee responded that it would need to be provided with further financial information, such as bank statements, to satisfy itself that respondent would be able to pay NZ$300 monthly. Respondent refused to provide that information.

Meanwhile, in May 2011, respondent was hired by client W to represent him in an ongoing divorce proceeding. Respondent sent W the terms of engagement and an invoice for NZ$6,900, and W paid him that day. Solicitor Smith instructed respondent (that is, provided the referral). Respondent participated in a telephone conference with the court on W's case on June 9, 2011. The court ordered W to provide and serve an affidavit in the case. Respondent sent W an email on June 21 advising the client that he would need more information for an affidavit and that W would need to provide "disclosure to the other side." However, he did not inform W of the date for providing disclosure, nor did he set a time for them to discuss the matter. W provided some information to respondent by email, but he later averred that he did not know what was required of him or when the next hearing would be.

Respondent's license lapsed as of July 1, 2011. The New Zealand Law Society gave respondent until July 19 to pay the amount owed on the cost award and to apply for renewal of the license, which required payment of a fee of NZ$1,426. Respondent submitted a renewal application, but he did not pay any of the fees or costs.[4]

---

[4] In August 2011, the New Zealand Law Society informed respondent that it had declined to renew his license, stating that it found his nonpayment of costs "disgraceful and dishonourable," which is grounds for discipline in New Zealand.

Respondent did not inform W that his license had lapsed. He did, however, inform Solicitor Smith of that fact in mid-July. Respondent also told Smith that he had prepared the affidavit required by the court and due before a July 21 hearing. Smith refused to permit respondent to file the affidavit. Instead, Smith asked respondent to immediately return all outstanding client files to him, which respondent did. Smith reported to the court and opposing counsel on July 20 that respondent's license had lapsed and that W would need time to obtain alternative counsel. The court conducted a telephone conference on July 21, at the conclusion of which the court ordered W to pay costs of NZ$800 for the failure to timely file the affidavit. The court advised W to seek to recover that cost award from respondent. Thereafter, W spoke to respondent by telephone; respondent told W that he could not pay the NZ$800 or refund even part of the NZ$6,900 advance fee, because he was "broke."

### D.  *New Zealand Disciplinary Proceedings*

#### 1.  *Investigation and charges by the New Zealand standards committee*

Clients E and W complained to the New Zealand Law Society about respondent's conduct, and the Wellington Branch Standards Committee (Standards Committee) was charged with investigating the complaints and deciding whether to bring formal charges. Respondent was informed of and participated in the investigation. The Standards Committee investigator requested documents relevant to the complaints, including, among other things, various financial records. Respondent provided some of the requested documents, but he declined to provide his financial records. The Standards Committee invited respondent to submit any materials he wanted the committee to consider in deciding whether the case should be forwarded to the New Zealand Lawyers and Conveyancers Disciplinary Tribunal (Disciplinary Tribunal or tribunal).

In June 2013, the Standards Committee charged respondent with 12 rule violations related to the two client complaints and to his failure to cooperate with the Standards

Committee investigation.[5] The charges were accompanied by five affidavits, including affidavits from clients E and W and the investigator, as well as a "Bundle of Documents"— documents relevant to the investigation—which included, among other things, correspondence between respondent and E and W and their new lawyers, respondent's written responses to the complaints and to the investigator, notices of hearings before the Standards Committee, and notices of determinations of the Standards Committee.

Respondent had returned to the United States in February 2013 without updating his contact information. As a result, the authorities could not find or serve him with the charges and supporting documents. In October 2013, respondent was served by substitute electronic service (by email). Respondent acknowledged receiving that substitute service and filed a response in November 2014. The matter then came before the Disciplinary Tribunal.

   2.   *Proceedings before the New Zealand Disciplinary Tribunal*

In January 2014, the Disciplinary Tribunal conducted a telephone conference to discuss procedures for the hearing. Respondent stated that he would not be returning to New Zealand and, therefore, would not be able to participate in person at the hearing. The chair of the Disciplinary Tribunal informed respondent that he would be required to appear personally if he wished to participate in the hearing and that the hearing would go forward without him if he were not present. The Disciplinary Tribunal's counsel then proposed that the parties proceed on the written record because there did not appear to be any material facts in dispute or credibility determinations to be made. As the tribunal's counsel later testified in the Oregon disciplinary proceeding, respondent seemed receptive to that idea, and the chair set the matter for hearing on that basis. Respondent did not file a motion or application for permission to appear remotely, nor did he request to reschedule the hearing until a time when he could be present. Respondent and the Standards Committee each provided written submissions, and the Disciplinary Tribunal

---

   [5] One of the charges was later dismissed.

conducted a brief hearing in November 2014. The Disciplinary Tribunal considered the charges against respondent and both parties' submissions under a "balance of probabilities" standard of proof. New Zealand Lawyers and Conveyancers Act (NZLCA) 2006 § 241. On December 9, 2014, it issued an opinion finding that the Standards Committee had proved all the charged disciplinary rule violations, and it struck respondent from the Roll.

### 3.   *Appeal to the New Zealand High Court*

Respondent appealed the Disciplinary Tribunal decision to the High Court in January 2015. Under the applicable statute, the High Court hears appeals in disciplinary proceedings as a rehearing; parties are permitted to introduce new evidence and make new arguments. NZLCA § 253(3). The High Court reaches its own decision on the merits and owes no deference to the Disciplinary Tribunal's findings. It may confirm, reverse, or modify the Disciplinary Tribunal's decision. NZLCA § 253(4).

Respondent submitted multiple pleadings to the High Court addressing various issues. He also submitted new evidence, including affidavits concerning, among other things, his health, residency, and financial condition. During the pendency of the appeal, respondent returned to New Zealand.

In January 2016, the parties submitted briefs on the merits. In his written submissions, respondent challenged the Disciplinary Tribunal's conclusion that his conduct violated the disciplinary rules. In addition, he claimed that the Disciplinary Tribunal had deprived him of "natural justice"—which, the parties agree, is essentially equivalent to due process in this country—in three ways: (1) by denying him the opportunity to appear at the hearing by telephone; (2) by failing to consider his challenge to one of the Disciplinary Tribunal panel members; and (3) by considering the issue of the appropriate sanction notwithstanding that he had not briefed that matter in his written submissions. At a substantive hearing on respondent's appeal, at which respondent was present and participated, the High Court discussed respondent's natural justice arguments

and later permitted the parties to submit further affidavits. Both respondent and the Standards Committee availed themselves of that option.

The High Court issued its decision in August 2016. It considered the entire record, including the additional evidence that respondent had submitted on appeal, and it addressed respondent's natural justice arguments. The High Court dismissed five of the charges against respondent but found him guilty on the remaining six charges (the 12th having earlier been dismissed). Specifically, the High Court determined that respondent had violated the New Zealand disciplinary rules with respect to client E by accepting instructions directly from the client and not from an instructing solicitor, by failing to act in a timely and competent manner, and by failing to repay monies due the client at the termination of representation. With respect to client W, the High Court determined that respondent violated the New Zealand disciplinary rules by failing to act in a timely and competent manner, and by failing to repay monies due the client at the termination of representation. In addition, the High Court determined that respondent violated the New Zealand disciplinary rules by failing to allow a Law Society investigator to examine his financial accounts during the investigation into his misconduct.[6] Based on those violations and respondent's disciplinary record,[7] the High Court affirmed the sanction that respondent should be stricken from the Roll.

---

[6] In the client E matter, the High Court found that respondent committed one violation of Rule 14.4 of the NZLCA (Conduct and Client Care Rules) 2008 (prohibiting barrister sole from accepting instructions to act for another person other than from a person licensed to act as a barrister and solicitor) and two violations of Rule 3 of the NZLCA (Conduct and Client Care Rules) (requiring lawyer to act competently and in a timely manner consistent with the terms of the retainer and the duty to take reasonable care). In the client W matter, the High Court found that respondent had committed two violations of Rule 3. In the ensuing investigation into respondent's misconduct, the High Court also found that respondent violated Regulation 34(a) of the NZLCA (Trust Account Regulations) 2008, which requires a lawyer to permit an investigator to examine records and accounts.

[7] The High Court considered the two Oregon disciplinary proceedings discussed above, as well as a third disciplinary proceeding in New Zealand in 2012. That matter arose out of respondent's failure to complete discovery in a proper manner in a matter in 2011. For that misconduct, respondent was censured, required to reduce his fee, and ordered to pay compensation and costs.

The High Court also rejected respondent's natural justice arguments. As an initial matter, it concluded that the parties' written submissions did not demonstrate that there had been a need for the Disciplinary Tribunal to conduct an evidentiary hearing; they did not identify any evidentiary issues that were disputed in that tribunal. And, in any case, respondent had not challenged the proposal to submit evidence on the written record and argue the law in written submissions.

Turning to the specifics of respondent's three natural justice claims, the High Court first found that the Disciplinary Tribunal should have exercised its discretion to allow respondent to appear at the hearing telephonically, due to his financial condition. However, the High Court also found that respondent was given an opportunity to have that matter reviewed after filing his written submissions with the tribunal, but he did not raise the issue again and, instead, acquiesced to and participated in the process that the tribunal had established. For that reason, the High Court concluded, respondent suffered no violation of his right to be heard.

The High Court also rejected respondent's argument that he had been denied natural justice when the Disciplinary Tribunal failed to consider his challenge to the impartiality of one of the panel members. The High Court noted that, while respondent had stated in an email that he was "uncomfortable" with one member of the panel, he had never filed a motion challenging that member's participation or otherwise pursued that concern before the Disciplinary Tribunal, and he did not identify the failure to address his discomfort with the panel member as a ground for appeal.

Finally, the High Court agreed with respondent that the Disciplinary Tribunal should not have considered the issue of the appropriate sanction without permitting respondent to file further submissions on that subject after it found him guilty of misconduct. Nevertheless, the High Court rejected respondent's argument that he was therefore deprived of natural justice, because respondent had had a full opportunity to present evidence and arguments respecting the appropriate sanction on appeal. As noted,

respondent submitted to the High Court, among other things, detailed medical evidence and arguments relating to the earlier Oregon disciplinary decisions. The High Court observed that those were the matters that respondent had argued that he would have put forward to the Disciplinary Tribunal on the question of the appropriate sanction. And, the High Court continued, it had considered all of the new evidence and arguments that respondent had submitted to it and, notwithstanding that evidence, it concluded that "the essential concerns about [respondent's] conduct [were] covered by the charges [that] were upheld *** [and that the] Tribunal was correct to find that overall [respondent's] conduct was dishonourable." The High Court, therefore, found that it was appropriate to strike respondent from the Roll.

Respondent thereafter filed two separate applications for recall of the High Court's judgment. The High Court dismissed the applications.

### E.   *Current Oregon Disciplinary Proceedings*

As discussed, the Bar was made aware of the imposition of discipline in New Zealand and initiated a reciprocal discipline proceeding in Oregon. Based on the High Court's findings of violations of the New Zealand disciplinary rules, the Bar alleged that respondent's misconduct violated the following Rules of Professional Conduct: RPC 1.3 (neglect of a legal matter); RPC 1.4(a) (failure to keep a client reasonably informed about the status of a matter); RPC 1.4(b) (failure to explain a matter to the extent necessary to permit a client to make informed decisions about the representation); RPC 1.5(a) (charging or collecting an excessive fee); RPC 1.15-1(d) (failure to account for or return client funds in his possession); RPC 1.16(d) (failure to fulfill duties upon termination of representation); RPC 5.5(a) (practicing law in violation of the regulations of the profession); RPC 8.1(a)(4) (failure to respond to inquiries by a disciplinary authority); and RPC 8.4(a)(4) (engaging in conduct prejudicial to the administration of justice).[8]

---

[8]  The Bar also initially alleged that respondent's misconduct in New Zealand violated ORS 9.160(1), but it has abandoned that argument in this court.

As noted, a trial panel of the Disciplinary Board was convened, and the matter went to a hearing in January 2019. The trial panel issued an opinion, rejecting respondent's arguments that he was not afforded due process in the New Zealand proceeding and concluding that respondent should be reciprocally disbarred in Oregon as a result of his misconduct in New Zealand. Respondent now seeks review of the trial panel's decision.

## II.  ANALYSIS

### A.  *Applicability of BR 3.5*

As a preliminary matter, respondent contends that this court does not have authority under BR 3.5 to impose reciprocal discipline, because a foreign country is not a "jurisdiction" within the meaning of that word in BR 3.5(a) and, therefore, the New Zealand decision striking him from the Roll is not a "judgment, order, or determination of discipline" within the meaning of that phrase in BR 3.5(a) and (b). We therefore begin with that issue before turning to consider respondent's challenges to the trial panel's decision.

BR 3.5 provides, in part:

"(a)  Petition; Notice to Answer.  Upon learning that an attorney has been disciplined for misconduct in another jurisdiction not predicated upon a prior discipline of the attorney pursuant to these rules, Disciplinary Counsel shall file with the Disciplinary Board Clerk a petition seeking reciprocal discipline of the attorney. The petition shall include a copy of the judgment, order, or determination of discipline in the other jurisdiction; may be supported by other documents or affidavits; and shall contain a recommendation as to the imposition of discipline in Oregon, based on the discipline in the jurisdiction whose action is reported, and such other information as the Bar deems appropriate. ***

"(b)  Order of Judgment; Sufficient Evidence of Misconduct; Rebuttable Presumption.  A copy of the judgment, order, or determination of discipline shall be sufficient evidence for the purposes of this rule that the attorney committed the misconduct on which the other jurisdiction's discipline was based. There is a rebuttable presumption that the sanction to be imposed shall be equivalent, to the

extent reasonably practicable, to the sanction imposed in the other jurisdiction."

In support of his argument that the New Zealand judgment striking him from the Roll cannot be a basis for discipline in Oregon, respondent points to two cases: *Small v. United States*, 544 US 385, 125 S Ct 1752, 161 L Ed 2d 651 (2005), and *In re Wilde*, 68 A3d 749 (DC 2013). Respondent argues that, under those cases, the plain meaning of "jurisdiction" refers only to domestic state and federal jurisdictions, and if the Bar Rules of Procedure were intended to apply to disciplinary judgments from foreign jurisdictions, the rules would say so explicitly. That argument is unpersuasive.

BR 3.5 applies to discipline for misconduct in "another jurisdiction" and requires the Bar to provide a copy of the determination of discipline from the "other jurisdiction." The Bar Rules do not define or limit the scope of the word "jurisdiction" in BR 3.5 to only those jurisdictions within the United States. Moreover, respondent points to nothing in the text, the context, or the history of the adoption of BR 3.5 that suggests any reason to interpret that rule to apply only to judgments issued by American courts.

In addition, the cases that respondent cites are inapposite and do not assist him. Both cases involve underlying criminal convictions entered against persons outside the United States. In *Small*, the United States Supreme Court considered whether a conviction in a foreign country can be a predicate crime for a felon in possession of a firearm charge under a federal criminal statute. The Court considered the meaning of the phrase "convicted in any court" in 18 USC § 922(g)(1), which makes it a crime for a person who has been "convicted in any court of a crime punishable by imprisonment for a term exceeding one year" to possess any firearm. The Court held that, for purposes of that criminal statute, the phrase "convicted in any court" encompasses only domestic, not foreign, convictions. *Small*, 544 US at 386. Similarly, in *Wilde*, the District of Columbia Court of Appeals considered the meaning of the phrase "conviction of a crime" in a District of Columbia disciplinary rule that provided for disbarment of lawyers convicted of crimes

of moral turpitude. The court interpreted the word "conviction" to apply only to domestic convictions, because foreign convictions differ from domestic convictions in such important ways that it was appropriate to assume that if the rule were intended to apply to foreign convictions it would say so. 68 A3d at 758.

Respondent argues that, notwithstanding the fact that neither case was concerned with the meaning of the word "jurisdiction" in a disciplinary rules context or addressed reciprocal discipline, they nonetheless are instructive because "disciplinary proceedings in a foreign country *** bring characteristics of criminal convictions in the same manner that criminal convictions in Oregon can result in disbarment." That argument is not well taken. First, as this court has stated, lawyer discipline proceedings are not criminal prosecutions, *In re Sanai*, 360 Or 497, 530, 383 P3d 821 (2016) (so stating); *see also* ORS 9.529 (bar proceedings are *sui generis*; they are within this court's inherent power to control, and they are neither civil nor criminal in nature), and neither disbarment nor any other sanction is criminal punishment. *In re Sassor*, 299 Or 720, 728, 705 P2d 736 (1985) ("Suspension or permanent disbarment for violations of the Disciplinary Rules is not a form of punishment for criminal conduct or moral turpitude. Its purpose is to protect the public from incompetent, dishonest, or irresponsible professional behavior."). Second, in both *Small* and *Wilde*, the decisions turned at least in part on the courts' concern that foreign convictions may be based on conduct that our domestic laws would permit or punish less severely or that would be inconsistent with an American understanding of fairness. *Small*, 544 US at 389-90; *Wilde*, 68 A3d at 756. No such concern exists in reciprocal discipline proceedings, because BR 3.5 ensures that the conduct for which the lawyer was disciplined in the other jurisdiction was conduct that would subject a lawyer to discipline in Oregon. BR 3.5(c)(2). Moreover, under BR 3.5, reciprocal discipline can be imposed only if the lawyer was afforded due process in the other jurisdiction. BR 3.5(c)(1). For those reasons, we conclude that the Oregon Rules of Professional Conduct provide for reciprocal discipline based on a determination of discipline against an Oregon lawyer who has

committed professional misconduct in another jurisdiction, whether that other jurisdiction is foreign or domestic, so long as the requirements for reciprocal discipline are met.

### B.  *Regulatory Framework*

We turn now to a brief description of those requirements and our process for determining whether to impose reciprocal discipline. In a reciprocal discipline proceeding, the order of discipline is "sufficient evidence *** that the attorney committed the misconduct on which the other jurisdiction's discipline was based." BR 3.5(b). For that reason, the Oregon disciplinary proceeding may not be used to challenge the factual findings of the foreign jurisdiction. *Sanai*, 360 Or at 500. Instead, this court's decision whether to impose reciprocal discipline turns on three questions: (1) whether the procedure in the jurisdiction that disciplined the lawyer "was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process," (2) whether the conduct for which the lawyer was disciplined in the other jurisdiction is conduct that should subject the lawyer to discipline here in Oregon, and (3) whether imposing the same sanction that the other jurisdiction imposed would result in "grave injustice or be offensive to public policy." BR 3.5(c). It is the lawyer's burden to prove that due process was not afforded him or her in the other jurisdiction. BR 3.5(e).

### C.  *Respondent's Due Process Arguments*

Respondent argues that he was denied due process in the New Zealand proceeding in seven ways. Several of those arguments pertain to events that occurred before the Disciplinary Tribunal. As we have discussed, respondent appealed the decision of the Disciplinary Tribunal to the High Court. Respondent participated fully in the proceedings before the High Court. Further, the High Court permitted the parties to submit additional evidence and arguments, and it considered the matter *de novo*.[9] Therefore, any

---

[9]  The High Court also observed that certain of respondent's "natural justice" arguments pertaining to events before the Disciplinary Tribunal were unpreserved or asserted alleged violations of his clients' rights and not his own. In addition, we note that one of respondent's claimed due process violations is based on his contention that he was not given adequate notice that his license would not be renewed. We reject that contention. As recounted above, when respondent renewed his license in 2010, he did so subject to the condition that he make

deficiencies in the process before the Disciplinary Tribunal were cured by the subsequent proceeding before the High Court, and respondent does not dispute that he received a full rehearing, with the opportunity to present additional evidence and argument, in that court. For that reason, we reject those arguments without discussion.

Respondent makes two arguments that merit brief examination. As we shall explain, however, neither argument is well taken.

First, respondent argues that he was deprived of due process in the New Zealand proceeding because the New Zealand courts use a "balance of probabilities" standard of proof, whereas Oregon courts use the higher "clear and convincing" evidence standard of proof. At oral argument in this matter, however, respondent conceded that Oregon courts are under no constitutional mandate to use a clear and convincing evidence standard of proof as opposed to any lesser standard of proof. And, in fact, this court routinely imposes reciprocal discipline in cases where the other jurisdiction sanctioned a lawyer based on a standard less than clear and convincing evidence.[10]

Second, respondent argues that the New Zealand rules of professional responsibility are unreasonably vague,

---

monthly payments on the costs assessed in 2008. Despite that condition, respondent made only one payment. Then, in April and June 2011, the Law Society sent respondent letters reminding him that all licenses had to be renewed by July 1 and that it could take his failure to make the payments into account when determining whether to renew his license. Nevertheless, respondent still did not make the payments. He allowed his license to lapse on July 1. The Law Society told respondent that, in order to renew his license, he would need to pay the overdue cost award and the renewal fee. Although respondent submitted a renewal application, he failed to pay both the cost award and the renewal fee. We conclude that respondent had more than sufficient notice of what he needed to do to renew his license.

[10] For example, in *Sanai*, this court imposed reciprocal discipline on a lawyer whom the Washington Supreme Court had disbarred. *Sanai*, 360 Or at 543. In Washington, lawyer misconduct must be proved by "a clear preponderance of the evidence." Washington State Court Rules, Rule for Enforcement of Lawyer Conduct 10.14(b). Likewise, this court imposed a reciprocal suspension on a lawyer who had entered into a stipulation for discipline in Washington in *In re Page*, 326 Or 572, 955 P2d 239 (1998). And in *In re Devers*, 317 Or 261, 263, 855 P2d 617 (1993), the court reciprocally suspended a lawyer after he was suspended for unethical conduct in Michigan. In Michigan, lawyer misconduct must be established by a preponderance of the evidence. Michigan Court Rule 9.115(J)(3).

insofar as, for example, they permit discipline on a finding of misconduct, which is defined as conduct "that would reasonably be regarded by lawyers of good standing as disgraceful or dishonourable." NZLCA 2006 § 7(1)(a)(i). Respondent's argument ignores the fact that the High Court found that respondent committed six violations of the New Zealand Lawyers and Conveyancers Act, involving three separate and specific provisions of that law, which the High Court quoted and discussed in its opinion, and it imposed discipline on that basis. Therefore, the fact that the New Zealand disciplinary rules include some terms that, on their face, may appear vague, does not persuade us that, as a whole, the New Zealand attorney discipline system does not provide lawyers with notice of what is expected.

As is evident from the foregoing, we conclude that respondent has not met his burden to establish that he was deprived of due process in the New Zealand proceedings leading to his disbarment.

### D.   *The Oregon Charges and the Appropriate Sanction*

As we have explained, the High Court found that respondent violated the New Zealand rules of professional conduct by commencing work for client E without proper authority and, in both the client E and the client W matters, by failing to complete the representation and then refusing to return unearned fees. The High Court also found that respondent failed to cooperate with disciplinary authorities in the investigation into his misconduct. The Bar alleged and the trial panel found that that misconduct in New Zealand also violated the following Oregon Rules of Professional Conduct: RPC 1.3 (neglect of a legal matter); RPC 1.4(a) (failure to keep a client reasonably informed about the status of a matter); RPC 1.4(b) (failure to explain a matter to permit client to make informed decisions regarding the representation); RPC 1.5(a) (charging an excessive fee); RPC 1.15-1(d) (failure to account for client funds); RPC 1.16(d) (failure upon termination to take steps to protect client interests, including refunding unearned portions of fees paid in advance); RPC 5.5(a) (practicing law in violation of the regulations of the profession); RPC 8.1(a)(2) (knowing failure to respond to lawful demand for information from a

disciplinary authority); and RPC 8.4(a)(4) (engaging in conduct prejudicial to the administration of justice).

Respondent asserts, without elaboration, that his misconduct in New Zealand violated only two Oregon disciplinary rules, RPC 1.4(a) and RPC 8.1(a)(2), and that those two violations are insufficient to justify disbarring him in Oregon. We agree with the Bar and the trial panel that respondent's conduct in New Zealand would violate the Rules of Professional Conduct as set out above. We turn, therefore, to consider the appropriate sanction for respondent's misconduct. In so doing, we keep in mind the final consideration required by BR 3.5: whether imposing the same sanction that the other jurisdiction imposed would result in "grave injustice or be offensive to public policy." BR 3.5(c)(3).

In reciprocal discipline cases, this court has an independent obligation to determine the appropriate sanction based on this state's disciplinary rules. *Sanai*, 360 Or at 538. In so doing, we refer first to the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) for guidance. *In re Walton*, 352 Or 548, 555, 287 P3d 1098 (2012). Under the framework established by the ABA Standards, we first consider the duty violated, the accused's mental state, and the actual or potential injury caused by the accused's misconduct. ABA Standard 3.0. Next, we consider any aggravating and mitigating circumstances. *Sanai*, 360 Or at 538. Finally, we consider the appropriate sanction in light of this court's case law. *Id*.

Respondent violated his duties of diligence and competence to both clients E and W. By collecting fees for work he did not perform, practicing law in violation of New Zealand law and regulations, and failing to cooperate with the Standards Committee investigation, respondent violated duties owed to the legal profession. Further, the record of the New Zealand proceeding demonstrates that respondent acted knowingly or intentionally with respect to each of the violations. And respondent's conduct resulted in actual injury to both client E and client W, who were never refunded the advance fees they paid for services that respondent did not perform. Client W also was forced to pay a NZ$800 cost assessment arising out of respondent's failure to submit a required affidavit.

Based on the disciplinary violations that we have found and our conclusions respecting the duties violated, respondent's mental state, and the injuries caused by respondent's misconduct, the presumptive sanction under the ABA Standards is disbarment. That is, disbarment is generally appropriate when a lawyer either knowingly fails to perform services for a client and causes serious or potentially serious injury, or engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury. ABA Standard 4.41(b), (c). In addition, disbarment is generally appropriate when a lawyer has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession. ABA Standard 8.1(b).

We next consider the existence of aggravating or mitigating circumstances that may affect our sanction determination.

We find several aggravating circumstances that are relevant to our determination. First, respondent has a significant history of similar disciplinary offenses. ABA Standard 9.22(a). As discussed, respondent was suspended in 2006 for one year for failing to deposit and maintain client funds in trust, failing to maintain complete records of client funds in his possession and to render appropriate accountings of those funds, failing to maintain an interest-bearing trust account, engaging in conduct prejudicial to the administration of justice, and failing to respond fully and truthfully to inquiries from, and comply with reasonable requests of, an investigatory authority. *Skagen*, 342 Or 183. Again in 2008, respondent was suspended for 18 months by a Disciplinary Board trial panel for failing to keep sufficient records of client funds in his possession and failing to deposit and maintain in trust unearned fees paid in advance. *Skagen*, 22 DB Rptr 292. And in 2012, respondent was subject to discipline in New Zealand; he was censured, required to reduce his fee, and ordered to pay compensation and costs for failure to complete discovery in a proper manner in a matter.

In addition we find that, in failing to return unearned fees to clients E and W, respondent acted with

a selfish motive. ABA Standard 9.22(b).  And we find that respondent has engaged in a pattern of misconduct, ABA Standard 9.22(c), and that he has committed multiple offenses, ABA Standard 9.22(d).

We also find that respondent has refused to acknowledge the wrongfulness of his conduct. ABA Standard 9.22(g). For one example, in the New Zealand proceeding, after initially admitting that he was required to repay client E the fees he had paid in advance, he later argued to the Disciplinary Tribunal that E had breached the retainer agreement and therefore repayment was not required. The High Court found that taking such a position was "disingenuous and dishonest," and, in the terms used in the applicable statute, "disgraceful and dishonourable." And in this proceeding, respondent has refused to concede that his misconduct in New Zealand violated several similar Oregon disciplinary rules, and he continues to maintain that he is and always has been entitled to disobey requests from disciplinary authorities for his financial records.

Finally, respondent has substantial experience in the practice of law. ABA Standard 9.22(i).

The record reflects only one mitigating factor: respondent's disbarment in New Zealand constitutes the imposition of another sanction for the misconduct. ABA Standard 9.32(k). On balance, the aggravating factors outweigh the sole mitigating factor and support a determination to disbar respondent.

Turning to Oregon case law, we observe that this court has disbarred lawyers whose collective misconduct demonstrated disregard for clients, professional obligations, and the disciplinary rules. It has "ordered disbarment for conduct that otherwise would justify a long suspension when the accused has a history of misconduct that has resulted in prior disciplinary sanctions." *In re Paulson*, 346 Or 676, 722, 216 P3d 859 (2009), *adh'd to as modified on recons*, 349 Or 529, 255 P3d 41 (2010). The court has disbarred lawyers for engaging in a pattern of misrepresentation, neglect, and failure to act on behalf of clients. *E.g.*, *In re Sousa*, 323 Or 137, 146-47, 915 P2d 408 (1996). And it has disbarred

lawyers who neglect clients' cases and refuse to cooperate with regulatory authorities after already having been disciplined for the same or similar misconduct. *In re Bourcier*, 325 Or 429, 436-37, 939 P2d 604 (1997). Those cases also support a determination to disbar respondent.

After considering the ABA Standards and our case law, we conclude that the misconduct for which respondent was struck from the Roll in New Zealand warrants disbarment in Oregon. We also find nothing in the record to suggest that disbarring respondent "would result in grave injustice or be offensive to public policy." BR 3.5(c)(3). We therefore hold that respondent should be disbarred as a reciprocal sanction for his misconduct in New Zealand.

Respondent is disbarred.